MAICHLE, by Guardian *ad litem*, and others, Respondents, v. JONOVIC and others, Appellants.

No. 447. Submitted under sec. (Rule) 251.54 June 5, 1975.— Decided June 30, 1975.
(Also reported in 230 N. W. 2d 789.)

For the appellants the cause was submitted on the brief of *Hayes and Hayes* of Milwaukee.

For the respondents the cause was submitted on the brief of *Robert J. Beaudry* of West Allis.

CONNOR T. HANSEN, J. The incident in question occurred on November 18, 1970. At that time Scott was eight years of age and Steve was nine years of age. They attended the same school in New Berlin, Wisconsin, and had participated together in Cub Scouts. The two families lived diagonally across the street from each other. Until about a month before the incident, the two boys were friends.

Scott testified that he and another older boy, Jeff Grundmann, had an argument about four weeks before the incident in question. Jeff started to pick on Scott and persuaded Steve to pick on Scott also. According to Scott, for the next four weeks, Jeff and Steve knocked books from Scott's hands; took Scott's ball at recess; physically held Scott while pretending to hit him saying there was going to be a fight and that they were going to beat him up; called Scott names; and chased Scott's dog. Scott also testified that on one occasion Jeff and Steve threw stones and gravel at him while he was walking his dog. Several of these incidents were observed by Mrs. Jonovic as they occurred when the boys got off the school bus, which stopped in front of the Jonovic home.

Scott testified that on the day in question, he boarded the school bus first and was seated when Jeff got on. According to Scott, Jeff started hitting him and when Steve subsequently got on the bus, Steve also hit him. The fighting continued until the bus driver got on the bus. Steve and Jeff continued to call Scott names and stated that everyone on the bus should get off at Scott's stop because they were going to beat him up. Scott testified that he decided to get off the bus early because the bus driver was going the wrong way. As he walked past Steve's seat, Scott swung at him apparently hitting Steve in the mouth. Scott then ran out of the bus and Steve followed, jumping Scott and trying to hit him as Scott ran for home. Mrs. Jonovic testified that she saw Scott running from the bus with Steve hanging on his back.

Steve's account of the incident was substantially different. He admitted that he had been scuffling with Scott for nearly three weeks before the incident in question. Steve initially testified that he did not see Jeff hitting Scott on the bus on the day in question. He later admitted that he had seen Jeff hitting Scott but denied that he also hit Scott. Steve testified that Scott got off the bus first. Then Steve got off and Scott hit him in the mouth. Steve stated that he ran after Scott, but did not catch him, nor did he lay a hand on him.

It was undisputed that prior to the incident on the bus, Steve and Scott had never had a fist fight although they had argued frequently. The bus ride from school was only two minutes long. While the boys normally got off the bus in front of Scott's house, the bus driver was a substitute and it was claimed by both Scott and Steve that they got off four houses early because the driver didn't know the stops.

The trial court instructed the jury on self-defense and submitted the following special verdict question: "At the time in question, was the striking of Steven Maichle by

Scott Jonovic with justification?" The jury answered this question in the affirmative, which answer was later changed by the trial court.

The sole issue presented by this appeal is whether the trial court erred in changing the jury's answer to this special verdict question.

The rules governing when it is proper for a trial court to change the answer of a jury verdict are well-settled. If there is any credible evidence which, under any reasonable view fairly admits of an inference that supports the jury's finding, the trial court has no authority to change the jury's answer. Only if the record is devoid of evidence that would sustain the verdict, or if the evidence were incredible, is it within the prerogative of the trial court to substitute its view of the evidence for that of the jury. *Lueck v. Janesville* (1973), 57 Wis. 2d 254, 262, 204 N. W. 2d 6; *Longville v. Leusman* (1970), 48 Wis. 2d 251, 255, 179 N. W. 2d 823; *Lehman v. Sentry Ins. Co.* (1967), 35 Wis. 2d 96, 98, 150 N. W. 2d 333.

Viewed most favorably to the jury's verdict, the jury could have found the following facts from the evidence: That Steve and Jeff had harassed Scott for four weeks prior to the incident in question by name-calling, pushing, knocking books out of his hands, by threatening to beat him up, including restraining him while they pretended to hit him, and by throwing stones or gravel at him; that on the day in question, Jeff and Steve hit Scott numerous times when he was on the school bus waiting to go home, which striking ceased only upon the approach of the bus driver; that Steve and Jeff bragged to other persons on the bus that they were going to beat Scott up in front of Scott's house when the bus got there; that Scott got off the bus before his regular stop and was, therefore, four houses from his home; that the total bus trip took only two minutes; and that after Scott got off the bus, followed by Steve and Jeff, he turned and struck Steve and

then ran home with Steve grabbing him by the back trying to hit him as he ran.

In *Crotteau v. Karlgaard* (1970), 48 Wis. 2d 245, 249, 179 N. W. 2d 797, this court quoted approvingly from Wis J I—Civil, Part II, 2006, as follows:

" 'Self-defense is the right to defend one's person by the use of whatever force is reasonably necessary.

" 'If the defendant reasonably believed that his life was in danger or that he was likely to suffer bodily harm, then he had a right to defend himself (and stand his ground) in such a way and with such force as under all the circumstances he at the moment honestly believed was reasonably necessary to save his life or to protect himself from bodily harm.

" 'By reasonable belief is meant such belief as a person of ordinary intelligence and prudence who was in the position of defendant would have under the circumstances existing at the time of the alleged offense. In determining whether the particular force used by the defendant was reasonably necessary, you should consider the fact that the defendant had the right to act on appearances, the amount of force exerted by the defendant, the means or instrument by which it was applied, as well as the strength of the plaintiff and the defendant and their difference in age (and sex).

" 'The defendant who alleges that he acted in self-defense has the burden to satisfy you by the greater weight of the credible evidence to a reasonable certainty that he reasonably believed that any forceful act of his was necessary to prevent any impending injury.' "

The trial court gave this instruction to the jury. Under this rule it is crucial to the defense that the actor had a reasonable belief that his life was in danger or that he was likely to suffer bodily harm. The reasonableness of the belief is determined by the standard of a person of ordinary intelligence and prudence under all the circumstances existing at the time of the offense, including the right of such person to act upon appearances. Generally, in the case of children, beliefs, instincts and impulses are

judged in relation to those of a reasonable person of like age, intelligence and experiences. *Cf. Brice v. Milwaukee Automobile Ins. Co.* (1956), 272 Wis. 520, 76 N. W. 2d 337; *Statz v. Pohl* (1954), 266 Wis. 23, 62 N. W. 2d 556, 63 N. W. 2d 711. The reasonableness of the actor's beliefs, moreover, is not defeated by a subsequent determination that his beliefs were mistaken. *Crotteau v. Karlgaard, supra,* page 250; *Keep v. Quallman* (1887), 68 Wis. 451, 32 N. W. 233.

The plaintiffs emphasize that Steve was not in a threatening posture when Scott struck him and that the two had never before been involved in a fistfight. Thus, it is contended, that while there was a reasonable possibility that Steve might have engaged Scott in a fistfight sometime after they got off the bus, at the time Scott struck Steve he was in no imminent danger of bodily harm. The plaintiffs assert that if Scott believed Steve would engage him in a fight, he could have sought the protection of the bus driver or he could have run home or to a neighbor's house.

The trial court, in ruling on the postverdict motion, took the view that the evidence most favorable to the jury's verdict was Scott's version as to what transpired. As such, the trial court's ruling was based on the fact that Scott admitted hitting Steve on the bus, while Steve was still sitting in his seat.

The trial court and this court on review, however, are required to consider the evidence most favorable to the jury's verdict, which usually, but not necessarily, is the evidence presented by the prevailing party. In this case, Scott's version of where the hitting took place was not the most favorable evidence to support the verdict. Therefore, it was incorrect for the trial court to limit its consideration of the evidence to that presented by Scott in ruling on the motion.

The jury could have found, from Steve's testimony, that the striking occurred off the bus. It was undisputed that the bus stopped more than four houses short of its

normal stop, which was in front of Scott's home. The jury could also have found that Scott got off the bus first, followed by Steve and Jeff, and that Scott then turned and hit Steve. This version of what transpired is more favorable to the jury's finding of a justified assault because it places Scott outside the immediate protection of the bus driver, at some distance from his home, and, because of Steve and Jeff's departure from the bus, places the incident one step closer to the potential realization of the threatened beating of Scott by Steve and Jeff. Given the testimony of previous arguments, some including the use of force by Steve and Jeff against Scott, the hitting that occurred earlier on the bus, and the generally announced threats of a further beating to take place after Scott got off the bus, the jury could have found that Steve and Jeff's departure from the bus behind Scott gave a sufficient appearance of intent to carry out the threat so as to create in Scott a reasonable belief that he was in danger of bodily harm unless he took pre-emptive action.

In *Keep v. Quallam, supra,* page 453, this court recognized that where appearances create a basis for a reasonable belief of imminent bodily harm, the person so threatened may repeal or prevent the supposed contemplated act. In that case the defendant accosted the plaintiff in the street and asked why the plaintiff had been slandering him. The plaintiff put his hand in his pocket and was about to pull it out when the defendant struck him on the head with a cane. The defendant knew that the plaintiff had threatened him with physical violence on previous occasions; that people considered the plaintiff dangerous; and that the plaintiff had a reputation for shooting people. This court held that the evidence was sufficient to submit the question of self-defense to the jury.

The departure from the bus by Steve and Jeff on the heels of Scott is, no doubt, subject to various interpretations. Scott and Steve lived just across the street from

each other, so it would be natural to assume that they would depart at the same stop. Moreover, both Scott and Steve testified that they got off the bus where they did because there was a substitute bus driver who did not know the normal stops. On the other hand, this court has held that the question of reasonableness of a person's actions and beliefs, where a claim of self-defense is asserted, is a question peculiarly within the province of the jury. *Higgins v. Minaghan* (1890), 76 Wis. 298, 45 N. W. 127. Scott undeniably testified that he hit Steve because he was afraid that Steve and Jeff were going to beat him up. There was evidence of an ongoing fight between the parties, with previous occasions of physical violence against Scott; hitting of Scott by Steve and Jeff just minutes before the incident in question; continued threats of a renewed beating; and the appearance of an overt act to carry out the threat when Steve and Jeff followed Scott off the bus.

The *Keep Case*, like the present case, involved an overt act of an ambiguous character. In that case it was determined that such an act may give rise to a reasonable belief of imminent bodily harm when coupled with knowledge of previous threats of physical harm and dangerous propensities exhibited by the victim. Similarly, the evidence in the present case, which the jury could reasonably have believed, showed that Scott had frequently been harassed and threatened by Steve and Jeff and that on some occasions, including the incident on the bus just two minutes prior to the event in question, physical force had been exerted against Scott. Moreover, during the two-minute bus ride, the threats of a renewed physical beating continued. As such, the present case is distinguishable from *Crotteau v. Karlgaard, supra.* In that case, two people were merely having a verbal argument when one hit the other without physical provocation or any overt act signifying that the victim intended any physical vio-

lence. In that case there was no evidence of any past altercations between the parties or of any propensity toward violence on the part of the victim which would have given color to his actions.

We are of the opinion that under all the circumstances presented the jury could have reasonably concluded from the evidence that Scott's striking of Steve was a justifiable attempt to repel or prevent imminent bodily harm.

*By the Court.*—Judgment reversed.