STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Michael DANIELS, Defendant-Appellant.

Supreme Court

*No. 89-0702-CR. Argued November 28, 1990.—Decided February 20, 1991.*

(Also reported in 465 N.W.2d 633.)

87

For the plaintiff-respondent-petitioner the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Kenneth P. Casey,* assistant state public defender.

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals filed December 14, 1989. The court of appeals reversed a

judgment of conviction of aggravated battery while armed with a dangerous weapon in violation of secs. 940.19(2) and 939.63, Stats. 1987–88, entered by the Circuit Court for Rock County, Edwin C. Dahlberg, Circuit Judge, and remanded the cause for a new trial.

The issue is whether the circuit court abused its discretion when it ruled as a matter of law that the defendant charged with assault could not present evidence, other than his own testimony, of the victim's prior violent acts of which the defendant was aware. This evidence was proffered to support the defendant's claim of self-defense, that is, to prove the defendant's state of mind: the reasonableness of the defendant's fear of the victim and of the defendant's use of force against the victim. We conclude, as did the court of appeals, that the circuit court abused its discretion when it erroneously concluded that the law restricts the defendant's proof of the victim's prior violent conduct to the defendant's own testimony. We also conclude, as did the court of appeals, that the error was not harmless. Accordingly we affirm the decision of the court of appeals.

For purposes of this review the facts are not in dispute. The defendant, the victim, and two other men were involved in an altercation in which the defendant shot the victim with the victim's gun. While the four men gave somewhat different accounts of the shooting, the undisputed facts are that the four men spent the evening of the shooting visiting friends and drinking. The victim and one of the men (not the defendant) got into an argument. The defendant attempted to intercede, apparently was threatened by the victim, and shot the victim.

The defendant was charged with attempted first-degree murder and aggravated battery while armed with a dangerous weapon. The defendant admitted at trial

91

that he shot the victim but claimed privileged self-defense. The jury found the defendant not guilty of attempted first-degree murder but found him guilty of aggravated battery while armed with a dangerous weapon.

To support his claim of self-defense the defendant attempted to show at trial that at the time of the shooting he reasonably believed that the victim was about to assault him and that his use of force was necessary to prevent or terminate a violent assault by the victim.[1] Thus the only issue at trial was the defendant's state of mind.

The defendant sought to prove his state of mind (1) by testifying in his own behalf about six incidents of which he was aware prior to the shooting in which the victim demonstrated his proclivity for violence,[2] (2) by questioning defense witness Tom Ewing at trial about the victim's *reputation* for being a violent person, (3) by cross-examining the victim about these incidents to show that the defendant knew about the incidents and

---

[1] The statutory privilege of self-defense requires that a person refrain from intentionally using force "which is intended or likely to cause death or great bodily harm unless he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself." Section 939.48(1), Stats. 1987–88.

[2] The defendant testified about six incidents that occurred in his presence before the shooting that demonstrated the victim's proclivity to violence and that gave rise to the defendant's fear of the victim: the victim's armed assault on defense witness Tom Ewing; the victim's pulling a gun at a party and threatening to kill a woman; the victim's pistol-whipping a man and firing a gun at him several times in the presence of the defendant and Ewing; the victim's chasing and shooting a man across a park; the victim's hitting the defendant in the jaw, knocking him against a house, and slamming him to the concrete; the victim's bragging about killing a biker with a tire iron.

that his fear of the victim was reasonable, and (4) by questioning Ewing about two of these incidents (in which Ewing had been personally involved) to show that the defendant knew about these incidents and that his fear of the victim was reasonable.

The circuit court admitted the defendant's testimony and Ewing's opinion about reputation (the first and second items of evidence described above) but excluded the testimony of the victim and Ewing about the six incidents (the third and fourth items of evidence described above).

Relying on *McMorris v. State,* 58 Wis. 2d 144, 205 N.W.2d 559 (1973), and *McAllister v. State,* 74 Wis. 2d 246, 250-51, 246 N.W.2d 511 (1976), the state and the defendant agree that all the evidence the defendant sought to introduce, including the testimony of the victim and witness Ewing that the circuit court excluded, is admissible within the circuit court's discretion. The parties disagree only about whether the circuit court abused its discretion in this case in excluding the evidence.[3] We summarize the rules set forth in *McMorris* and *McAllister.*

---

[3]The state's position on review in this court is somewhat different from the position it sets forth in its petition for review. Seeking review of the decision of the court of appeals, the state challenged the scope of the *McMorris* rule. The state described the first issue for which it sought review in its petition for review as follows: Should this court narrow the scope of the *McMorris* rule so that when homicide or assault is charged and the defendant asserts a self-defense claim, "only the defendant [would be permitted] to testify about prior violent acts of the victim, along with the testimony of other witnesses only as to the victim's general reputation in the community for violence."

The state has apparently abandoned its request that the court narrow the scope of *McMorris.* The state and the defendant now agree about the scope of *McMorris.*

First, *McMorris* allows an accused in a prosecution for assault or homicide to support a self-defense claim by proving prior specific instances of the victim's violence of which the accused was aware at the time of the assault to establish the accused's state of mind about the danger the victim posed. "The admission of such evidence rests in the exercise of sound and reasonable discretion by the trial court." *McMorris,* 58 Wis. 2d at 152. We went on to say,

> When the accused maintains self-defense, he should be permitted to show he knew of specific prior instances of violence on the part of the victim. It enlightens the jury on the state of his mind at the time of the affray, and thereby assists them in deciding whether he acted as a reasonably prudent person would under similar beliefs and circumstances.
>
> . . .
>
> When the issue of self-defense is raised in a prosecution for assault or homicide and there is a factual basis to support such defense, the defendant may, in support of the defense, establish what the defendant believed to be the turbulent and violent character of the victim by proving prior specific instances of violence within his knowledge at the time of the incident.[4]

---

[4]For a discussion of *McMorris,* see 1 T. Hammer and R. Donohoo, *Substantive Criminal Law in Wisconsin,* sec. 171 (1988); Note, *Evidence—Self-Defense—Prior Acts of the Victim—McMorris v. State, 58 Wis. 2d 144, 205 N.W.2d 559 (1973),* 1974 Wis. L. Rev. 266.

The state and defendant agree that evidence of the victim's prior violent conduct cannot be used to prove that the victim acted in conformity with his character during the shooting charged. 1 Wigmore, *Evidence,* sec. 63.1 at p. 1382 (Tillers rev. 1983); Hammer and Donohoo, *supra* sec. 171.1; 2 Louisell and

The past violent conduct of the victim of which the accused is aware, reasoned the court in *McMorris,* 58 Wis. 2d at 151, affects what the accused might reasonably expect of the victim in the future.

Second, according to *McMorris,* an accused's proof of the victim's prior violent acts of which the accused was aware is not limited to the accused's own testimony. In *McAllister,* 74 Wis. 2d at 250–51, we stated that the accused should be allowed, within the discretion of the circuit court, to produce supporting evidence to prove the particular acts of which the accused claims knowledge, thereby proving the reasonableness of the accused's knowledge and apprehension of the victim and the credibility of his assertions about his state of mind. The court recognized that the self-serving nature of an accused's testimony about prior violent acts of the victim makes corroborating evidence of those acts particularly important for an accused's claim of self-defense. We stated:

> A defendant should not be limited merely to his own assertion that he had knowledge of particular violent acts, but should be allowed to produce supporting evidence to prove the reality of the particular acts of which he claims knowledge, thereby proving reasonableness of his knowledge and apprehension and the

Mueller, *Federal Evidence,* sec. 136 (rev. ed. 1985). As we said in *Werner v. State,* 66 Wis. 2d 736, 743, 226 N.W.2d 402 (1975), the purpose in admitting testimony about the victim's prior violent acts is not to

. . . support an inference about the victim's actual conduct during the incident; rather, the testimony relates to the defendant's state of mind, showing what his beliefs were concerning the victim's character. Such evidence helps the jury determine whether the defendant "acted as a reasonably prudent person would under similar beliefs and circumstances" in the exercise of a privilege of self-defense.

credibility of his assertion.[5]

Third, according to *McMorris,* 58 Wis. 2d at 152, and *McAllister,* 74 Wis. 2d at 251, the admission of evidence of prior specific instances of the victim's violence, whether by the testimony of the defendant or other witnesses, rests in the exercise of sound and reasonable discretion of the circuit court. The circuit court should exercise care that the evidence of specific violent acts of the victim not be allowed to extend to the point that it is being offered to prove that the victim acted in conformity with his violent tendencies. In *McAllister* we stated:

> The accumulation of evidence as to a particular violent act of the victim, which is within the knowledge of the defendant who alleges self-defense may go beyond the legitimate purpose of establishing what the defendant believed to be the violent character of the victim and reach the point where it is only offered to prove the victim acted in conformity with the prior violent behavior. It is the duty of the trial

---

[5]*McAllister,* 74 Wis. 2d at 250–251.

The state argues that we should make explicit the "statutory" basis for the *McMorris* rule, i.e. whether the *McMorris* evidence is admissible under sec. (Rule) 904.04, Stats. 1987–88, or sec. (Rule) 904.05, Stats. 1987–88. The state did not explain the significance of fitting the *McMorris* rule under either or both of these rules. We are therefore not persuaded that we should discuss or decide the question the state presented. For discussions of the rules of evidence and *McMorris* type evidence, see Note, *Evidence—Self-Defense—Prior Acts of the Victim—McMorris v. State, 58 Wis. 2d 144, 205 N.W.2d 559 (1973),* 1974 Wis. L. Rev. 266; 2 Weinstein and Berger, *Weinstein's Evidence,* para. 404 [06], 405 [04] (1990); 2 Louisell and Mueller, *Federal Evidence,* secs. 139, 148–50 (rev. ed. 1985).

judge to exercise discretion in excluding evidence which is offered in such a manner . . .. *McAllister,* 74 Wis. 2d at 251.

As we stated previously, the issue before us is whether the circuit court abused its discretion in refusing to allow the defendant to cross-examine the victim and to examine witness Ewing about specific incidents of the victim's violence of which the defendant was aware at the time of the shooting.[6]

To determine the basis for the circuit court's ruling to exclude the proffered evidence, we must examine the record. The circuit court first refused to allow the victim to testify on cross-examination in the state's case in chief about prior incidents of the victim's violence of which the defendant was aware. The circuit court barred this line of questioning until the defendant testified and brought into issue his state of mind at the time of the shooting. The circuit court stated that the victim "would be available later if needed."

After the defendant testified about the six incidents involving the victim's violent nature and about his fear that the victim would assault him, the defendant attempted to call the victim to cross-examine him about these six incidents and to question Ewing about the two incidents in which Ewing was involved. The circuit court refused to allow the defendant to cross-examine the victim or question Ewing about these incidents. The entire colloquy on the circuit court's ruling on the defendant's

---

[6]The defendant also argues that the circuit court's refusal to admit the evidence denied him his constitutional right to put on a defense and that denial of cross-examination of the victim about the victim's prior violent acts denied him his constitutional right to confront his accusers. Because we hold that the circuit court abused its discretion, we need not reach these issues.

request to recall the victim and cross-examine him reads as follows:

MR. ROBSON [defense counsel]: We'd like to recall Floyd Gregg [the victim], Your Honor, at this time.

COURT: Well I assume we are ready for the jury, then, Miss Buker?

MR. ROBSON: Yes, we are.

MS. BUKER [Assistant District Attorney]: Wait a minute. I think that *Mr. Robson is calling Mr. Gregg to elicit information about specific acts of violence from a witness other than the defendant and I think that the law is not nearly so generous in that regard and that information may very well not be admissible.*

COURT: Well, I'm not clairvoyant, so why do you wish to recall Mr. Gregg?

MR. ROBSON: I intend to ask Mr. Gregg if he in fact did do the incidents referred to in the testimony of the defendant and if in fact he did brag to the defendant about taking the life of a person in Rockford. If he admits those, I guess we don't need to go into them any further. If he denies them, we have rebuttal testimony to offer impeaching testimony.

COURT: Well, does the State intend to introduce any testimony contrary to what Mr. Daniels has put in the record, counsel?

MS. BUKER: I don't know. I mean, I guess if he is allowed to question Mr. Gregg about those incidents I would also have some questions for Mr. Gregg about them.

COURT: Well, we already have the specific prior instances of alleged violence on the part of the victim which the defendant claims he knew of at the time of the offense. And that those were admitted to go to his state of mind at the time of the alleged offense in question. Unless and until the State puts

98

those in issue, why do we need any additional testimony?

MR. ROBSON: Judge, I . . .

COURT: The issue is whether or not knowing those things he acted as a reasonably prudent person would under the same or similar circumstances. We already got them in with his testimony which at this point is uncontradicted.

MR. ROBSON: I believe that those issues—those items are corroborating to what the defendant has testified to as corroborating evidence that they are perfectly admissible.

COURT: Well, he's already testified to those things, and that he had those things in his mind at the time of this offense.

MR. ROBSON: Now, I also have a witness, Tom Ewing, here, Your Honor. And Tom Ewing, in addition to testifying to some of those incidents, would also be willing and able to offer an opinion as to Mr. Gregg's violence, propensity for violence.

COURT: *Well, I think we have gone as far as the rule allows which permitted you to show that the defendant allegedly knew of specific instances of violence on the part of the victim.*

MR. ROBSON: If the State attempts to show that that is self-serving or that it should in any way be discounted—

COURT: Well, unless and until the State does that, counsel, I am not prepared to permit any further testimony in that regard.

MR. ROBSON: And if they do that in final argument—

COURT: Well, I assume that the State may argue that the defendant may or may not be believable, but both counsel will be restricted at the time of final argument to the facts in evidence and reasonable inferences therefrom. *But I think we have gone as far as the rule lets us on that part; if that's the only*

99

*purpose of calling Mr. Gregg I will sustain the objection of the State to his testimony—further testimony—*

MR. ROBSON: Judge, I—then the ruling is that there is to be no further testimony about the specific instances from any other individual, even though that other individual may have been involved?

COURT: That's correct. (Tr. 40-153-56) (emphasis supplied).

The circuit court thus limited the defendant to proving the reasonableness of his fear of the victim by Ewing's opinion about the victim's reputation for violence and by his own self-serving testimony about six incidents of which the defendant was aware in which the victim exhibited a proclivity to violence. As the circuit court recognized, the defendant's credibility about his knowledge of the victim's prior violent activity was at issue. Yet the circuit court refused to admit any evidence that corroborated the incidents, the defendant's knowledge of these incidents, and the reasonableness of the defendant's fear of the victim. The defendant argues that the circuit court abused its discretion.

We have often stated that the circuit court's exercise of discretion is not the equivalent of unfettered decision making. The record on appeal must reflect the circuit court's reasoned application of the appropriate legal standard to the relevant facts in the case. If the circuit court applied the wrong legal standard, that is, if the circuit court based its decision on an error of law, this court will reverse the circuit court's decision as an abuse of discretion. *Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 472, 326 N.W.2d 727 (1982); *State v. Hutnik,* 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968).

Accordingly we must first determine the basis of the circuit court's ruling that the victim and the witness Ewing could not testify about the incidents the defendant described as showing his state of mind of reasonable apprehension of the victim.

The defendant contends that the circuit court based its refusal to admit the proffered evidence on an erroneous conclusion that the evidence was not admissible as a matter of law. In contrast, the state asserts that the circuit court knew that the proffered evidence was admissible under the law but refused to admit it in the exercise of its discretion. We conclude that the exchange among the assistant district attorney, defense counsel, and the bench reveals that the circuit court excluded the proffered evidence on the mistaken view that the law allows only the defendant to testify about the victim's prior specific violent acts to prove the defendant's state of mind.

We reach this conclusion for three reasons. First, the assistant district attorney apparently objected to the proffered evidence on the grounds that it was not admissible as a matter of law. The assistant district attorney argued to the court: "I think that the law is not nearly so generous" when a victim testifies regarding his prior violent acts as compared to a defendant testifying regarding the victim's prior violent acts. A victim's testimony "may very well not be admissible." The assistant district attorney did not ask the circuit court to exercise its discretion to exclude the evidence.

Second, the circuit court spoke in terms of excluding the evidence because of a rule of law, not as a matter of discretion. The circuit court referred to the rule of law twice. First it stated: "Well, I think we have gone as far as the rule allows which permitted you to show that the

defendant allegedly knew of specific instances of violence on the part of the victim." The circuit court again stated it excluded the evidence because of a "rule," saying that "we have gone as far as the rule lets us on that part . . .." We read these words to mean that the circuit court believed the proffered evidence was excluded as a matter of law, not as a matter within the discretion of the circuit court.

The circuit court's view that its ruling to exclude the proffered evidence does not rest on discretion is further manifested by a comparison of the colloquy quoted above regarding the cross-examination of the victim with the circuit court's discussion of the admissibility of the defendant's own testimony about the victim's prior violent conduct. The circuit court clearly stated that the admission of the defendant's own testimony about the victim's prior conduct was within its discretionary powers: the circuit court "has discretion under the law as to what is or is not admissible." (Tr. 39-131.) When the defendant offered proof for admission of his testimony the circuit court stated: "I am well aware of the rule that once the plateau that self-defense is arguably in the record that the defendant's knowledge of prior violent acts may be admissible in the discretion of the court if they are not too remote or otherwise effective for some other reason." (Tr. 40-110.) When the circuit court exercised its discretion to permit the defendant to testify regarding the six incidents of the victim's prior violence, the circuit court gave reasons for its discretionary ruling: "I will permit the testimony. It may possibly enlighten the jury on his state of mind at the time of the fray and determine whether or not he acted as a reasonably prudent person under the same or similar circumstances. Which is the test under self-defense . . .." (Tr. 40-124.)

Third, the circuit court not only did not refer to its discretion in excluding the proffered evidence but it also expressed no reason for excluding the proffered evidence other than its reference to a rule. It appears reasonable therefore for this court to conclude that the circuit court was relying on a rule of law to exclude the evidence. Because no rule of law requires the exclusion of the evidence, we must conclude that the circuit court rested its decision on an erroneous view of the law.[7] Thus the circuit court abused its discretion.

The state urges us to interpret the circuit court's refusal to admit the proffered evidence as exhibiting a proper exercise of discretion, not as resting on an error of law. The state reminds us that when the circuit court applies the correct rule of law and sets forth no reasons or inadequate reasons for its exercise of discretion applying the correct rule of law, this court may engage in its own examination of the record and determine whether the facts in the record support the circuit court's decision. The state relies on *State v. Alsteen,* 108 Wis. 2d 723, 727–28, 324 N.W.2d 426 (1982); *State v. Pharr,* 115 Wis. 2d 334, 343, 340 N.W.2d 498 (1983); *State v. Fishnick,* 127 Wis. 2d 247, 257, 127 N.W.2d 272 (1985). We agree with this statement of the law.

Other than the rule of law, the only explanation we can glean from the record of why the circuit court refused to admit the proffered evidence is that the circuit court believed the evidence was only marginally probative. The circuit court stated that the acts the defendant testified to were uncontroverted and implied that evi-

---

[7]Furthermore, when the circuit court relied on a rule of law to exclude the proffered evidence rather than on a reasonable inquiry and examination of the facts as a basis for its decision, the circuit court failed to exercise its discretion. The failure to exercise discretion is itself an abuse of discretion.

dence corroborating the defendant's testimony was not needed. This reasoning is, as we pointed out in *McAllister*, fallacious.

Evidence corroborating the defendant's self-serving testimony on the only issue in the case, the defendant's state of mind, would be highly persuasive to the fact finder. The mere fact that the state does not contest the defendant's testimony about the victim does not obviate the defendant's need to bolster his own testimony with testimony of other witnesses, especially that of the victim himself. As *McAllister* makes clear, the defendant should not be limited merely to his own assertion but should be allowed to produce supporting evidence to prove the reality of the particular acts of which he claims knowledge.

The state's brief supplies two reasons the circuit court might have used to exclude the proffered evidence. The state's primary argument is that the circuit court could have excluded the evidence because admitting it would have resulted in a confusing "mini-trial" on whether the victim committed any or all of these violent acts. This argument confuses the facts to be proved. The only fact to be proved is the defendant's state of mind, that is, whether the defendant had grounds to believe the victim was violent on previous occasions so that at the time of the shooting the defendant's conduct was reasonable. The trial need not have become a trial about the details of the incidents, because the exact details of the six incidents are not relevant to the case at bar. The defendant did not attempt to introduce repetitive evidence about the factual basis for his testimony but instead sought to prove that his beliefs about the victim's violence, based on incidents of which others were

104

also aware, were reasonable and shared by others who knew the victim. The corroborative testimony was very significant to the defendant's case and the risk of the trial deteriorating into a series of mini- or collateral trials could be reduced if the circuit court limited counsel to questions relevant to the defendant's state of mind.

The state also argues that the proffered evidence had the potential for unduly lengthening the trial, confusing the jury, complicating the trial, and prejudicing the state's case with "bad character evidence." The state appears to be referring to our caution in *McAllister* that the accumulation of evidence about a particular violent act of the victim within the knowledge of the defendant may go beyond the legitimate purpose of establishing what the defendant believed to be the violent character of the victim and serve only to prove the victim acted in conformity with the prior violent behavior. *McAllister*, 74 Wis. 2d at 251. In *McAllister* this court affirmed the circuit court's refusal to admit duplicative evidence corroborating the reality of the occurrence of the victim's violent acts about which the court had already admitted corroborating evidence.

In this case the evidence the circuit court refused to admit was not duplicative of evidence already admitted. In this case the circuit court allowed *no* corroborating evidence about the victim's specific violent acts or the defendant's knowledge of the acts.[8] Thus the facts in this

---

[8]Ewing testified about the victim's *reputation;* his testimony did not corroborate the defendant's testimony about specific acts. Reputation evidence is less persuasive than evidence of specific incidents of conduct. Clearly, *McCormick on Evidence* sec. 187, p. 550 (3d ed. 1984). Furthermore Ewing's testimony was somewhat inarticulate. Ewing's entire trial testimony about reputation is as follows:

record do not justify the application of the *McAllister* caution about the circuit court's exercising discretion to

> Q. [Mr. Robson]: Do you know Floyd Gregg [the victim]?
> A. I know him.
> Q. How long have you known Floyd Gregg?
> A. About two years. Two-and-a-half years.
> Q. Sir, from your knowledge of Floyd Gregg, do you have an opinion as to his reputation for violence or peacefulness?
> A. He do—
>
> COURT: Well, answer yes or no. Do you have an opinion?
>
> A. Yes, yes.
> Q. And what is that opinion, sir?
> A. He, you know, sometimes go off sometimes, you know.
> Q. Could you say that a little louder?
> A. I say sometimes he go off and stuff, you know, like a little old firecracker.
> Q. Like that?
> A. Right.
> Q. That occasionally what you're saying, occasionally, is that—
>
> MS. BUKER: Objection, leading.
> MR. ROBSON: Well, I'm trying to establish what he means.
> COURT: Well, ask him to further edify, counsel, rather than trying to do it yourself.
> MR. ROBSON: Fine.
>
> Q. [Mr. Robson]: When you say he goes off like a firecracker, what do you mean?
> A. Sometimes, you know, he just want to, you know, like, you know, like just go off and like, you know, want to do something crazy, you know?
> Q. And does that mean something violent?
> A. Yeah, it happened to me once a time.

(Tr. 40-160-161.)

Roland Brent, one of the defendant's companions during the shooting, did not testify at trial; his testimony at the preliminary hearing was read to the jury. Brent referred to the victim's pulling a gun in his presence and in the presence of the defendant. Brent's testimony does not, however, obviously relate to any of

106

refuse to admit duplicative evidence on the ground that the evidence would serve only to prove that the victim acted in conformity with prior violent behavior.[9]

The circuit court expressed neither of the rationales the state proposes. Furthermore the facts in this record do not support the state's suggested rationales.

The state argues that if this court were to find an abuse of discretion in this case, the circuit court, on remand for a new trial, would have to admit all the

the six incidents about which the defendant testified. Brent's testimony therefore did not corroborate the defendant's. Compare Brent's entire testimony about the victim's pulling a gun before the shooting in this case that is set forth below with the incidents the defendant described that are set forth in note 2, *supra.*

Brent's entire testimony about the victim "pulling" a gun was as follows:

Q. [Mr. Robson]. You knew that Floyd Gregg [the victim] owned a gun, didn't you?
A. Yes, I did.
Q. You saw him with that gun in the past, hadn't you?
A. Yes.
Q. Mike [the defendant] knew that he had that gun, too, didn't he?
A. Yes.
Q. Because you were present when Mike saw him with that gun, isn't that right?
. . ..
Q. Floyd Gregg [the victim] prior to November 30th, 1986 had pulled a gun in your presence had he not?
A. Yes, he had.
Q. And also present was Michael Daniels, wasn't he?
A. Yes. (Tr. 40-196-97.)

[9]Furthermore, to prevent the jury's viewing the corroborative evidence as proof that the victim was the aggressor, the circuit court could have instructed the jury that the evidence was to be used for the limited purpose of proving the defendant's state of mind.

corroborating evidence the defendant wishes to present. We do not agree with the state's position. *McMorris* allows the admission of opinion and reputation evidence and evidence of the victim's prior violent acts known to the defendant under limited circumstances. The defendant must be charged with an assault or a homicide. The defendant must introduce a factual basis for a self-defense claim. The evidence of the victim's prior specific acts must be relevant to the defendant's state of mind at the time of the altercation and its admissibility rests on the sound discretion of the circuit court.

The circuit court need not allow all the evidence an accused wishes to introduce. The circuit court cannot, however, without reason supported by the record, refuse to admit in a case like this all of the corroborating evidence the accused proffers. The circuit court's discretion to refuse to admit proffered corroborating evidence will be upheld only when a reasonable rationale exists that is supported by the facts in the record.

As the defendant's brief correctly points out, the defendant would have no cause to complain had the circuit court exercised its discretion to prevent repetitive questioning, confusion of issues or interrogation that was only marginally relevant. The defendant correctly concedes that the circuit court could have permitted limited testimony by Ewing to corroborate the defendant's testimony that the defendant had observed the victim assault Ewing and observed, along with Ewing, the victim pistol whip a third man. The defendant agrees, and properly so, that it would have been entirely appropriate for the circuit court to control this testimony to prevent needless rehashing of the details of these incidents. (Defendant's Brief, p. 30.)

Assuming the circuit court exercised its discretion on a correct interpretation of the law, and we have held the circuit court did not apply the correct law, the abuse of discretion in this case was the circuit court's total ban, without any reasonable rationale existing in the record, of all non-cumulative corroborating evidence.

The state argues that if the circuit court erred in excluding the evidence, it was harmless error. We are unpersuaded by this argument. The excluded evidence would have helped establish the defendant's privilege of self-defense, namely, the defendant's state of mind and the reasonableness of his actions. The evidence excluded was highly relevant to the claim of self-defense and was needed to bolster the defendant's credibility. The defendant was particularly anxious to question the victim in this case about his boast about killing a biker with a tire iron. The victim's flaunting of his brutal act was especially important to support the reasonableness of the defendant's actions.

Furthermore, in its closing statement the state challenged the defendant's testimony about the victim's six prior incidents of violence. During closing argument the assistant district attorney intimated, over defendant's objections, that the victim had been unfairly treated because he had not been able to testify about the six incidents and that the victim's testimony would have contradicted the defendant's version of the six incidents. The court of appeals concluded that these comments amounted to prosecutorial misconduct. We need not decide that issue. For our purposes here we need only note that the closing argument made the circuit court's

exclusion of the proffered evidence more damaging to the defendant.

We conclude that in this case a reasonable possibility exists that the error contributed to the conviction. We therefore cannot conclude that the exclusion of the evidence was harmless error. *State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985).

For the reasons set forth we affirm the decision of the court of appeals reversing the conviction of the circuit court.

*By the Court.*—The decision of the court of appeals is affirmed.

CALLOW, WILLIAM G., J. (dissenting). I would reverse the decision of the court of appeals and affirm the circuit court's decision to exclude the contested evidence in this case. I dissent because: (1) the circuit court's decision to exclude the testimony was not an abuse of discretion, and (2) any error that may have occurred was harmless error.

The majority concludes, from its review of the record, that the circuit court abused its discretion because the majority believes that the circuit court held the mistaken view that the law allowed only the defendant to testify about the victim's prior specific violent acts to prove the defendant's state of mind, (majority op. at 101). The majority bases this conclusion on its interpretation that the circuit court did not speak in terms of excluding the evidence as a matter of discretion, that the circuit court expressed no valid reason for its decision to exclude the testimony other than its reference to a rule, and on comments made by the assistant district attorney. The majority does not give proper deference to the circuit court, and ignores a guiding principle enunciated in *Loomans v. Milwaukee Mutual Ins. Co.,* 38 Wis. 2d

110

656, 662, 158 N.W.2d 318 (1968), "[t]he review of an order which rests on legal discretion is limited to abuse and this court will look for reasons to sustain the trial court rather than make an independent review of the question as we do for legal error."

Reviewing the record in light of this threshold inquiry, the circuit court judge excluded the additional evidence not because he misunderstood the law, but rather because he did not believe that the additional evidence would be relevant or probative unless the State actually challenged Daniels' (the defendant's) knowledge of the victim's prior violent conduct. Because the standard is abuse of discretion, this court may not simply substitute its discretion for that of the circuit court on the question of relevance. *In re Johnson,* 9 Wis. 2d 65, 75, 100 N.W.2d 383 (1960). Reviewing courts should examine the record to determine if the circuit court properly exercised its discretion.

The question of whether the defense would be allowed to introduce extrinsic evidence to support the defendant's statements concerning the victim's prior conduct was raised repeatedly during the trial. Comments by the circuit court judge indicate that he considered this matter to be one of his discretion. First, the following discussion occurred on the second day of the trial while the jury was excused:

Court: Upon counsel's assurance that defendant will take the stand and upon risk of having it stricken if not, I will permit you to ask the witnesses if they have an opinion as to the defendant's reputation for violence.

Ms. Buker
[Assistant District Attorney]: You mean the victim's. You mean the

111

victim's reputation.

Court: Yes. That's all until after the defendant testifies.

Mr. Robson
[Defense Counsel]: And then at some point, Judge, am I going to be permitted under the *McMorris* and—

Court: When the defendant testifies if he intends to go into other prior acts of violence, I have already indicated we will have a hearing outside of the presence of the jury and *the Court has discretion under the law as to what is or is not admissible.* I am well aware of the law that once the plateau has been reached where there is factual evidence for the defense of self-defense, that the defendant may testify as to prior acts of violence known to him at the time of the event in question . . .. That's the law as I understand it. And if you can show me anything to the contrary I will be happy to look at it, counsel.

Mr. Robson: . . . am I prohibited from inquiring of the victim whether on a certain occasion he in fact bragged about what he had done in the way of causing a beating death?

Court: When the victim testifies, you will be precluded from doing that at that time, counsel, *until after the defendant testifies. And then we will reach the problem as it may exist at that time.* But you can ask this witness if he

112

> has an opinion as to the defendant's use of violence and if he has an opinion he can give that opinion. That's all . . . .. All you can ask this witness is if he has a reputation as to the victim's—as to the victim's violence and if he has, you can have him state that opinion. That's all you are going to get out of this witness. That's all you are going to get out of any witnesses *until the defendant testifies.* That's the law and that's the way we are going.

(Emphasis added.)

This discussion indicates that the judge did not have a closed mind in regard to admitting evidence other than the defendant's own statements, but rather that this evidence would not be considered until after the defendant had himself testified and raised a factual basis for his claim of self-defense.

Secondly, the circuit court judge allowed the following question from the defense attorney of a state witness, Al Clay Reynolds:

Q: And do you have an opinion, sir, from your knowledge of him over the years that you have known him of his reputation for violence or peaceableness?

A: Well, over the years I know him like playing football.

Court: Well, do you have an opinion? Yes or no?

A: No.

By Mr. Robson:

Q: You don't have any opinion?

A: I never really paid an amount of attention.

113

A third example demonstrating that the court exercised its discretion is the testimony of Winnebago County Deputy Coroner Swanson. Swanson testified under an Offer of Proof, outside of the presence of the jury that the victim was listed as the person who had caused the death of a Mr. Jacobson. The circuit court judge allowed, in addition to the Offer of Proof, the admission of documents concerning the death of Mr. Jacobson. The judge then stated:

> Court: As I understand it, *if it should be necessary and the Court should decide that this testimony is relevant and germane to an issue being tried,* we could advise the jury that the coroner was here and testified and was cross-examined and have her read the testimony.

> Ms. Buker: . . . I'm not agreeing that anything he said today could under any circumstances be admissible.

> Court: I understand your position. *But [if] the court should disagree with you, then I assume you would agree that we use that portion of the transcript the court found proper.*

(Emphasis added.)

The coroner's report and testimony clearly referred to a prior incident of the victim's conduct. The circuit court judge, in this exchange, demonstrated a willingness to admit relevant extrinsic evidence of the victim's prior conduct, beyond the testimony of the defendant.

Finally, during the defendant's testimony, the defense counsel attempted to elicit what the defendant knew about the victim's prior violent conduct. In response to an objection from the State, the court stated: "I think we have reached the plateau where it's arguably

a question of whether or not the defendant acted in self-defense. Why would not evidence of his knowledge of prior violent acts be *relevant and material?*" (Emphasis added.) The circuit court judge then allowed the defendant to testify to six prior instances of the victim's violent conduct outside of the presence of the jury. The judge then stated:

> And the law as I understand it permits the defendant to testify as to specific prior instances of violence on the part of the alleged victim. All of the specific acts that the witness has testified to occurred if I recall his testimony within the last year-and-a-half. The state of mind of the accused of course is an issue in this matter. I will permit the testimony. It may possibly enlighten the jury on his state of mind at the time of the fray and determine whether or not he acted as a reasonably prudent person under the same or similar circumstances. Which is the test under self-defense. You of course will be permitted to call rebuttal witnesses if you wish, Miss Buker.

In this statement, the judge demonstrates that evidence is admissible if it is relevant to the test of whether the defendant acted as a reasonably prudent person under the same or similar circumstances.

The circuit court judge did not believe that extrinsic evidence was inadmissible, but rather that it was not relevant unless the State took issue with the defendant's recitation of the victim's prior violent conduct. The judge stated:

> Well, we already have the specific prior instances of alleged violence on the part of the victim which the defendant claims he knew of at the time of the offense. And that those were admitted to go to his state of mind at the time of the alleged offense in question. Unless and until the State puts those in

> issue, why do we need any additional testimony? . . .
> The issue is whether or not knowing those things he
> acted as a reasonably prudent person would under the
> same or similar circumstances. We already got them
> in with his testimony which at this point is uncon-
> tradicted . . .. Well, I think we have gone as far as
> the rule allows which permitted you to show that the
> defendant allegedly knew of the specific prior
> instances of violence on the part of the victim.

The majority concludes that this last sentence indicated that the judge had a mistaken view of the law, (majority op. at 102). However, as the full statement indicates, the judge based his decision on his belief that, until the State actually challenged Daniels' knowledge of the victim's prior violent conduct, additional testimony about prior instances of the victim's prior conduct was irrelevant. Additionally, in response to the defense counsel's concern that the State may attempt to show that the defendant's statements were self-serving or should be discounted, the court stated: "Well, unless and until the State does that, counsel, I am not prepared to permit any further testimony in that regard." These statements suggest that the judge did not believe that the testimony or evidence was probative unless there was some question raised as to the defendant's truthfulness. These statements do not suggest that the judge was misapplying the *McAllister* rule. *McAllister* allows the introduction of other evidence at the discretion of the trial court. *McAllister v. State,* 74 Wis. 2d 246, 250–51, 246 N.W.2d 511 (1976). It does not suggest that the court *must* allow extrinsic evidence to bolster extensive and uncontradicted testimony of the defendant. On the contrary, it is the *duty* of the court to exclude such evidence when it is offered to prove that the victim acted in conformity with prior violent behavior. *McAllister,* 74 Wis. 2d at 251.

The defendant's testimony was not the only evidence admitted concerning the victim's propensity for violence. The circuit court judge also allowed the testimony of Thomas Ewing for the purpose of establishing that the victim had a reputation for violence.

The record demonstrates that the circuit court judge was interested in restricting evidence only to that which was relevant and material, and that he did not wish to try collateral issues in the case. During one discussion between the parties and the court concerning prior convictions of the parties he stated: "I am not going to open the collateral can of worms as to whether or not I am going to attempt to try all five of these issues in this case." He then went on to add:

> Well, the only question is the state of mind. He's testified that these events occurred and he was aware of them. Whether the jury chooses to believe that or not is a question of credibility on the part of the defendant.

Evidence of the narrowness with which the majority addresses this issue is the manner in which the majority dismisses two of the State's arguments explaining why the judge acted within his discretion: (a) to prevent a series of mini-trials and (b) to prevent further testimony of the victim's bad character and lead the jury to believe that the victim "got what he deserved," and acquit the defendant on those grounds. *See* Cleary, *McCormick on Evidence,* sec. 193 (3d ed. 1984).[1] The majority suggests

---

[1]McCormick goes on to state: "when the identity of the first aggressor is really in doubt, the probative value of the evidence ordinarily justifies taking this risk." *McCormick on Evidence, supra.* The evidence before the circuit court overwhelmingly indicated that the victim was the first aggressor. Daniels, Reynolds and Brent (a witness at the preliminary hearing) testified that

that the circuit court could have given a limiting instruction, (majority op. at 107 n.9), although such an instruction may be of limited utility once the "cat is out of the bag." Admission of additional evidence about the victim's prior instances of conduct could have easily led the jury to believe that the victim acted in conformity with the prior violent behavior. *See McAllister,* 74 Wis. 2d at 251. The defendant was allowed to testify about the victim's behavior in six prior instances. The State did not dispute this conduct. The jury heard a third-party witness, Thomas Ewing, testify that the victim had a reputation for violence, and "sometimes [goes] off" like a "little old firecracker." They also heard Ewing testify that Gregg sometimes did "crazy" things, and state that it happened to him one time. The jury heard Roland Brent's preliminary hearing testimony that he had seen Gregg pull a gun in the defendant's presence in the past. Based on the extent of this testimony and the fact that the State did not contest Daniels' testimony about Gregg's prior violent conduct, the circuit court judge used his discretion in deciding that additional evidence would be irrelevant.

This court will affirm a discretionary order if there appears any reasonable basis for the trial court's decision. *Littmann v. Littmann,* 57 Wis. 2d 238, 250, 203 N.W.2d 901 (1973). The majority properly cites *Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 472, 326 N.W.2d 727 (1982), for the proposition that if a circuit court judge bases the exercise of his discretion upon a mistaken view of the law, his conduct is beyond the limits of discretion.

Gregg (the victim) was the first aggressor, and that Daniels had tried to calm him down. Gregg himself admitted that Daniels had attempted to calm him down before the shooting. Because of this, the probative value of the additional evidence would have been slight.

The applicable language states, ". . . if this court's review of the record indicates that the circuit court applied the wrong legal standard, this court will reverse the circuit court's decision as an abuse of discretion." *Hedtcke,* 109 Wis. 2d at 471–72. This language indicates that this court should review the record to determine, based on this review, whether the circuit court applied the wrong legal standard. Even if the circuit court had had a mistaken view of the law (which I do not concede), this would not be grounds for automatic reversal. "A reviewing court is obliged to uphold a discretionary decision of a trial court, if it can conclude *ab initio* that there are facts of record which would support the trial judge's decision had discretion been exercised on the basis of those facts." *Schmid v. Olsen,* 111 Wis. 2d 228, 237, 330 N.W.2d 547 (1983). The majority agrees that this court may engage in its own examination of the record and determine whether the facts in the record support the circuit court's decision, when the circuit court sets forth no reasons or inadequate reasons for its decision, (majority op. at 103). I believe that any additional testimony about the victim's prior violent conduct would have been cumulative, and only marginally probative. Because the additional testimony would only have reiterated what the jury had already heard, I believe that there was a strong possibility that this testimony would go beyond the legitimate purpose of establishing what the defendant believed to be the violent character of the victim, and serve only to prove that the victim acted in conformity with his prior violent behavior. *McAllister,* 74 Wis. 2d at 251.

Interestingly, the majority indicates that this additional evidence would not necessarily have to be admitted at a new trial. The majority suggests that the circuit court could refuse to admit this proffered evidence by

articulating a reasonable rationale supported by the facts in the record, (majority op. at 108). In other words, had the circuit court stated, "although I am permitted to admit other testimony concerning the victim's prior violent conduct, at my discretion I find it to be marginally probative and cumulative" this court may not have found an abuse of discretion. I find this mechanistic application of the *Hedtcke* principle to be troubling and inconsistent with the *Loomans* directive that this court should look for reasons to sustain the trial court.

I also disagree with the court that the error was not harmless. The circuit court judge gave a jury instruction on self-defense. He stated:

> For the defendant's conduct to be privileged under the law of self-defense, the defendant must have reasonably believed that there was an actual or imminent unlawful interference with his person. This requires that he actually believed such interference to be unlawful. The fact that his belief may have been erroneous does not deprive the defendant of his privilege to use force in defense of his person if a person of ordinary intelligence and prudence under the same circumstances would have believed such interference to be unlawful.

This jury instruction is Wis. J I—Crim. 800, and reflects language this court has previously approved. *Crotteau v. Karlgaard,* 48 Wis. 2d 245, 249–50, 179 N.W.2d 797 (1970) (citing 6 Am. Jur. 2d, *Assault and Battery,* p. 135, sec. 161) ("It is not necessary that the danger which gave rise to the belief actually existed; it is sufficient that the person resorting to self-defense at the time involved reasonably believed in the existence of such a danger, and such reasonable belief is sufficient even where it is mistaken."). *See also Maichle v. Jonovic,* 69 Wis. 2d 622, 628, 230 N.W.2d 789 (1975). The evidence which the

defendant sought to have admitted into evidence may have convinced the jury that his testimony concerning Gregg's prior acts was accurate (if they were unconvinced previously). However, the test for self-defense is one of *reasonableness,* not of *veracity.* The question of whether his belief was erroneous was irrelevant. The important inquiry is not whether Daniels had good cause to hold such a belief (which is what the additional evidence would have addressed), but rather whether it is reasonable for a person in that situation to discharge three bullets into an unarmed man.

The additional evidence would not have informed the jury that Daniels had no opportunity to escape from Gregg or that Daniels and Brent could have not subdued Gregg without shooting him, nor would it have bolstered the reasonableness of Daniels' assertion that he was afraid of Gregg because of Gregg's prior conduct (*see McMorris v. State,* 58 Wis. 2d 144, 150, 205 N.W.2d 559 (1973)). Had the evidence been of this nature, it would have been relevant to the jury in determining whether Daniels' belief (erroneous or not) that shooting Gregg was necessary to avoid imminent death or great bodily harm, was reasonable under the circumstances. *See* sec. 939.48(1), Stats. Because the additional evidence did not go to the reasonableness of Daniels' belief, there is no reasonable possibility that the error (if there was one) contributed to the conviction. As such, the error was harmless. *See State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). For these reasons, I would reverse the court of appeals and would affirm the circuit court's decision to exclude this additional testimony as within his discretion. Accordingly, I dissent.

I am authorized to state that Justices Donald W. Steinmetz and Louis J. Ceci join in this dissenting opinion.