STATE of Wisconsin, Plaintiff-Respondent,

v.

Jason C. CLARK, Defendant-Appellant.

Court of Appeals

*No. 92–1922–CR. Submitted on briefs May 6, 1993.—Decided September 30, 1993.*

(Also reported in 507 N.W.2d 172.)

For the defendant-appellant the cause was submitted on the briefs of *Margarita Van Nuland* and *John M. Brinckman* of *Brinckman & Brinckman, S.C.* of La Crosse.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Eich, C.J., Dykman and Sundby, JJ.

DYKMAN, J. Jason Clark appeals from a judgment of conviction for physical abuse of a child, Angela H., contrary to sec. 948.03(2)(b), Stats. The issue is whether the trial court erred in admitting evidence that Clark had battered a previous girlfriend as proof of his intent to injure Angela. We conclude that the trial court properly exercised its discretion in allowing evidence of the prior bad act. Therefore, we affirm.

## I. BACKGROUND

At the time of the incident which is the subject of this case, Clark had been dating Angela H. for over a year. Angela told Michael Weissenberger, a La Crosse County Sheriff's Department investigator, that she had an argument with Clark around 2:00 a.m. on October 18, 1991. The argument took place in Clark's pickup truck, and concerned his dating other girls and her attending Oktoberfest with two male friends while Clark was out of town. Clark became violent, punching Angela in the chest and stomach, and banging her head against the window of the truck. Angela also told Weissenberger that after she got out of the truck, Clark kicked her in the buttocks and the legs, and grabbed her by the hair and beat her head against the ground.

Late in the evening on October 21, 1991, Angela complained of a severe headache, and informed her mother and her sister of the argument and the blows to the head she had received nearly four days earlier. Her parents then took her to the Lutheran Hospital-La Crosse/Gundersen Clinic emergency room, where she was examined by Dr. Ledbetter and interviewed by a social worker. While speaking with the social worker, Angela recounted many details of the fight that she had provided to Weissenberger.

However, prior to the preliminary hearing, Angela gave a sworn statement to Clark's counsel recanting her previous account of the argument with Clark. She claimed to have sustained the injuries in a fall while walking with Clark on the trails at Granddad's Bluff on October 21, 1991. While Angela acknowledged having an argument with Clark over his "cheating on her," she stated that the argument occurred on October 21, and that she had lied about being struck by Clark. Her explanation for her earlier, alleged fabrication was that she had wanted to make it easier to break up with Clark.[1]

At trial, Angela's mother, her sister, a girlfriend, Dr. Ledbetter and the social worker all testified that Angela had confided that she had been physically assaulted. Dr. Ledbetter expressed her opinion that Angela's injuries were consistent with the patient history that had been provided.[2] The physician also stated

---

[1] Angela explained that it would be easier to terminate the relationship because, if her parents thought ill of Clark, they would prevent him from contacting her.

[2] Dr. Ledbetter summarized Angela's history as follows:

Patient told me that she had been beaten up by her boyfriend approximately four days before, that she had a headache[,] and abdominal pain had been present since that incident, and that she

that a bruise on Angela's arm and the tenderness on the top of her head were inconsistent with an alleged fall while hiking less than twelve hours before the examination.

Angela took the stand and read aloud in the jury's presence the statement she had given to Clark's counsel. Finally, Michelle G., a former girlfriend of Clark, testified that in July 1988, she had an argument with Clark regarding his "going out with other people." After that quarrel, Clark sought out Michelle at a friend's house and punched her in the eye while she was wearing her glasses. The resulting laceration required three stitches.

The jury returned a guilty verdict and this appeal resulted.

## II. STANDARD OF REVIEW

The admission of evidence is a matter within the trial court's discretion. *State v. Roberson*, 157 Wis. 2d 447, 452, 459 N.W.2d 611, 612 (Ct. App. 1990). We will not disturb an evidentiary ruling where the trial court has exercised its discretion in accordance with accepted legal standards and the facts of record. *Id.* Where the trial court fails to adequately explain the reasons for its decision, we will independently review the record to determine whether it provides a reasonable basis for the trial court's discretionary ruling. *State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498, 502 (1983).

---

presented that evening for treatment because her parents had just discovered that this had happened, and were concerned about her symptoms[.] But she stated that her symptoms had been present for four days.

490

## III. OTHER-ACTS EVIDENCE

In deciding whether to admit evidence of prior bad acts, the trial court must apply a two-part test. *State v. Kuntz*, 160 Wis. 2d 722, 746, 467 N.W.2d 531, 540 (1991). First, the trial court must determine whether the evidence is admissible under sec. 904.04(2), Stats., which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*Kuntz*, 160 Wis. 2d at 746, 467 N.W.2d at 540.

If the trial court finds that the other-acts evidence falls under one of the sec. 904.04(2), Stats., exceptions, it must then consider whether the probative value of such evidence and the necessity for its admission are substantially outweighed by the danger of unfair prejudice. *Kuntz*, 160 Wis. 2d at 748, 467 N.W.2d at 541. Implicit in this analysis is the requirement that evidence of prior bad acts is relevant to an issue in the case. *Roberson*, 157 Wis. 2d at 453, 459 N.W.2d at 612.

### A. Admissibility under Sec. 904.04(2), Stats.

The trial court instructed the jury that evidence of the battery of Michelle G. had been received to show Clark's motive and intent in physically abusing Angela. Clark claims that the evidence was not admis-

sible for either purpose. The state does not contest the assertion that admission of the evidence to demonstrate motive was improper. We consider this omission a concession by the state that the trial court erred in this respect. *See Charolais Breeding Ranches v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493, 499 (Ct. App. 1979). Therefore, we will only consider whether the other-acts evidence was properly admitted to establish Clark's intent.

Citing *State v. Bedker*, 149 Wis. 2d 257, 265, 440 N.W.2d 802, 804–05 (Ct. App. 1989), and *State v. Goldsmith*, 122 Wis. 2d 754, 757, 364 N.W.2d 178, 180 (Ct. App. 1985), Clark contends that his intent was never at issue because he had denied committing any act which caused bodily harm to Angela. Clark further argues that under the two cases, Michelle G.'s testimony and medical records should have been excluded because they were relevant only to the question of intent, an element of the crime which was not in dispute. We reject these arguments.

*Bedker* and *Goldsmith* are consistent with *State v. Sonnenberg*, 117 Wis. 2d 159, 344 N.W.2d 95 (1984). In *Sonnenberg*, the court reasoned that the defendant's intent, motive or plan was not an issue in a second-degree sexual assault case where the defense was that none of the alleged incidents of touching had occurred. *Id.* at 172, 344 N.W.2d at 101. Accordingly, other-acts evidence on the defendant's motive for touching the victim was held inadmissible.

However, in *State v. Fishnick*, 127 Wis. 2d 247, 258–59, 378 N.W.2d 272, 278–79 (1985), the supreme court clarified its holding in *Sonnenberg*, noting that the state had introduced the other-acts evidence to impeach the defendant's statement on a collateral matter, rather than to prove the defendant's intent, motive

or plan. The trial court's admission of the evidence thus violated sec. 906.08(2), Stats., and the general rule against impeachment on collateral matters by extrinsic evidence. The court concluded its discussion by stating: "*Sonnenberg*, therefore, does not support [the appellant's] argument that a defendant's denial of committing an offense necessarily makes the defendant's motive, intent, or plan not in issue." *Fishnick*, 127 Wis. 2d at 259, 378 N.W.2d at 279.

Subsequent decisions of the supreme court and this court have reaffirmed the proposition that intent and/or motive may be at issue, despite the defendant's claim that the act with which he or she is charged never occurred. *See State v. Plymesser*, 172 Wis. 2d 583, 594–95, 493 N.W.2d 367, 372 (1992); *State v. Friedrich*, 135 Wis. 2d 1, 23, 398 N.W.2d 763, 773 (1987); *State v. Mink*, 146 Wis. 2d 1, 15 n.8, 429 N.W.2d 99, 104 n.8 (Ct. App. 1988). Furthermore, in each case, the court upheld the trial court's admission of other-acts evidence.

The conflict between our decisions in *Bedker* and *Goldsmith* and the other four cases poses a question of the precedent to be followed. While published decisions of the court of appeals have statewide precedential effect, sec. 752.41(2), Stats., we are also bound by the decisions of our supreme court. *State v. Lossman*, 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984). When decisions of our supreme court appear to be inconsistent, we follow the court's most recent pronouncement. *Spacesaver Corp. v. DOR*, 140 Wis. 2d 498, 502, 410 N.W.2d 646, 648 (Ct. App. 1987). We see no reason not to extend this rule to a situation where a decision of this court conflicts with a supreme court opinion *and*

our decision *precedes* the supreme court opinion. Therefore, we conclude that intent was an issue in this case, despite the defense's theory that Angela's injuries were sustained in a fall not caused in any manner by Clark.

Clark concedes that intent is an element of the charged offense, and that if we were to find that intent was at issue, then the first part of the test would be satisfied.

### B. Balancing Probative Value and Prejudice

#### 1. *Probative Value*

██

The probative value of prior-act evidence is a function of its nearness in time, place and circumstances to the crime sought to be proved. *Roberson*, 157 Wis. 2d at 456, 459 N.W.2d at 614. Clark argues that the probative value of the battery of Michelle G. is minimal due to the differences in circumstances and the three-year gap between that battery and the alleged abuse of Angela H. We disagree.

██

There are many similarities between the two incidents including: (1) each victim was Clark's girlfriend when Clark battered her; (2) in each instance, Clark and the victim quarreled about his dating other females; (3) in each instance, Clark physically attacked the victim as a result of the quarrel; and (4) each victim required medical attention for her injuries. These similarities are significant and render the prior-act evidence highly probative.

██

In determining whether the earlier act was too remote in time to be probative, we consider "not only

the time that has passed, but also the opportunities presented over that period for the defendant to repeat the acts." *Kuntz*, 160 Wis. 2d at 747, 467 N.W.2d at 541. When compared to other prior-act cases, three years is a relatively short period of time. *See Plymesser*, 172 Wis. 2d at 596, 493 N.W.2d at 373 (thirteen years between prior act and crime charged); *Kuntz*, 160 Wis. 2d at 747–48, 467 N.W.2d at 541 (sixteen years); *Mink*, 146 Wis. 2d at 16, 429 N.W.2d at 105 (twenty-two years). Moreover, because Clark had gone out with Angela for over a year in that three-year span, it is unlikely that he had many opportunities to batter other girlfriends under the circumstances noted above. Therefore, we conclude that the battery of Michelle was not so remote that it was irrelevant.

The parties have also called our attention to the following quote from *Whitty v. State*, 34 Wis. 2d 278, 297, 149 N.W.2d 557, 565 (1967), *cert. denied*, 390 U.S. 959 (1968):

> Evidence of prior crimes or occurrences should be sparingly used by the prosecution and only when reasonably necessary. Piling on such evidence as a final "kick at the cat" when sufficient evidence is already in the record runs the danger, if such evidence is admitted, of violating the defendant's right to a fair trial because of its needless prejudicial effect on the issue of guilt or innocence.

Clark maintains that ample evidence of intentional physical abuse was provided by the witnesses who testified to being told by Angela that Clark had beaten her. While it is true that the jury could infer Clark's intent from other evidence in the record, we cannot conclude that evidence of the battery of Michelle was not "reasonably necessary" or constituted "piling on" by the state.

495

## 2. *Danger of Unfair Prejudice*

Clark argues that had the trial court conducted a proper balancing, it would have concluded that the probative value of Michelle G.'s testimony was outweighed by the danger of unfair prejudice. In addition to his assertions that the testimony had no probative value, Clark claims that it was unfairly prejudicial because: (1) "[i]t drew the focus away from the fact that the medical evidence contradicted [Angela H.] being beaten"; and (2) "[i]t detracted from why [Angela H.] lied about the alleged beating." We reject these claims for several reasons.

First, contrary to Clark's contention, the jury could have found that the medical evidence corroborated Angela's original version of events. Dr. Ledbetter testified that she had diagnosed Angela as a domestic abuse victim. Further, she expressed her opinion that the color of a bruise on Angela's arm and the tenderness on the top of her head were consistent with a physical assault that occurred four days before the examination, rather than a fall within twelve hours of the examination.

Second, Clark's examples reflect a lack of understanding of the concept of unfair prejudice. If evidence were unfairly prejudicial simply because it detracted from the defense's theory of the case, then the bulk of the evidence introduced at trial by the state in any case would have to be classified as unfairly prejudicial. Clearly, this is not the test.

██ In the context of other-acts evidence, "prejudice refers to the potential harm in a jury concluding that, because an actor committed one bad act, he [or she] necessarily committed the crime charged." *Roberson,* 157 Wis. 2d at 456, 459 N.W.2d at 614. While the dan-

ger of such prejudice may have existed in this case, the trial court took appropriate measures to limit the potential prejudice to Clark.

The court did not permit the police officers who investigated the battery of Michelle G. to testify. Moreover, the court instructed the jury that the evidence was admitted to prove motive and intent, and that it could not treat the earlier beating as proof that Clark committed the charged offense.[3] *See* Wis J I—Criminal 275. When the jury is so instructed, the danger of unfair prejudice is cured. *State v. Grande*, 169 Wis. 2d 422, 436, 485 N.W.2d 282, 286–87 (Ct. App. 1992). Given the probative value and the trial court's efforts in limiting prejudice, we conclude that the trial court properly exercised its discretion in admitting the evidence of Clark's prior bad act.

*By the Court.*—Judgment affirmed.

SUNDBY, J. (*dissenting*). I view with dismay the further depreciation of the *Whitty* rule[1] which our decision herein effects. The *Whitty* rule is codified in sec. 904.04(2), Stats., which provides:

---

[3] Because the state conceded that the other-act evidence was not admissible to prove motive, the jury instruction was erroneous in this respect. The test for harmless error is whether a reasonable possibility exists that the error contributed to the conviction. *State v. Daniels*, 160 Wis. 2d 85, 110, 465 N.W.2d 633, 642 (1991). Motive was not an element of the offense charged. Therefore, we conclude that there is no reasonable possibility that telling the jury the evidence was offered to show motive contributed to Clark's conviction. Accordingly, the error was harmless.

[1] *Whitty v. State*, 34 Wis. 2d 278, 149 N.W.2d 557 (1967), *cert. denied*, 390 U.S. 959 (1968).

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *Whitty*, the court stated:

> Over 60 years ago, this court in *Paulson v. State* (1903), 118 Wis. 89, 98, 94 N.W. 771, [774], pointed out and explained the rule that the evidence against an accused should be confined to the very offense charged and neither general bad character nor commission of other specific disconnected acts, whether criminal or merely meretricious, could be proved against him. Exceptions pointed out were all based upon relevancy and probative value.

*Id.* at 292–93, 149 N.W.2d at 563. We have forgotten the purpose of the rule. Other-acts evidence is now routinely admitted to show that the defendant must be guilty because he or she has committed other bad acts in the past.

In this case, the "very offense charged" is Clark's beating his sixteen-year-old girlfriend. The state could not prove the charge through his girlfriend's testimony because she recanted her story of the beating. She explained that she made up the story because she learned that Clark had cheated on her and telling the story to her parents would make it easier to break off the relationship. She subsequently made a voluntary statement to Clark's attorney in which she stated:

> After I got a subpoena to appear in court, I knew I had to come forward. I wasn't about to lie if I was going to be under oath. That scared me. And I

also couldn't let Jason take punishment for something he didn't do.

Because the state could not prove "the very offense charged," it proved another, unconnected act. It moved the court to admit evidence that, several years before, Clark had battered another girlfriend. The state argued that this evidence was admissible and relevant to prove Clark's "intent and motive" to cause bodily harm to his present girlfriend. The trial court admitted the evidence over Clark's objection because Clark's claim of innocence "put[s] everything at issue," including intent.

I agree that a defendant's denial that he or she committed the offense charged does not relieve the state of its burden to prove every element of the offense charged. If intent is an element of the offense, the state may introduce evidence which is relevant to that issue. *See State v. Fishnick*, 127 Wis. 2d 247, 378 N.W.2d 272 (1985). However, simply because intent is an element of the offense charged does not allow the state to prove defendant's culpability by other-acts evidence. When intent can be established beyond a reasonable doubt by "the very offense charged," it is unnecessary to resort to other-crimes evidence. Plainly, in this case, the state did not introduce evidence of Clark's battering of his former girlfriend to show intent, but to prove Clark's culpability.

The state relies on *Estelle v. McGuire*, 502 U.S. —, 116 L. Ed. 2d 385 (1991), where the Court held that the admission of expert testimony and evidence related to prior injuries to prove existence of the "battered child syndrome" did not violate the defendant's federal constitutional rights. The court said: "When offered to show that certain injuries are a product of child abuse, rather than accident, evidence of prior injuries is rele-

vant even though it does not purport to prove the identity of the person who might have inflicted those injuries." *Id.* at 396.

McGuire argued that because he did not raise the defense of accidental death at trial, evidence of the "battered child syndrome" was inadmissible. The Court, however, pointed out that the prosecution's burden to prove every element of a crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense. The Court concluded that therefore evidence of battered child syndrome was relevant to show intent. *Id.* at 397. The evidence admitted in *McGuire* consisted of prior injuries to the child McGuire was charged with killing, the "very offense charged."

Clark's theory of defense was that his girlfriend accidentally fell and was injured. She supported his defense by her testimony and letter recanting her original story. The state, however, was allowed to introduce evidence that Clark previously battered another former girlfriend following a similar dispute regarding fidelity. The evidence concerned a wholly unrelated act and not "the very offense charged." In short, the state proved its case against Clark by showing that he was of a character or disposition to beat his girlfriends. This is exactly the kind of evidence which the *Whitty* rule was intended to exclude.

Further, any relevance of evidence that Clark, on a prior occasion, had battered another girlfriend was remote. Plainly, the probative value of that evidence was outweighed by its prejudicial effect.

For these reasons I respectfully dissent.