STATE of Wisconsin, Plaintiff-Respondent,

v.

Marvin L. HEREFORD, Defendant-Appellant.†

Court of Appeals

*No. 94–1596–CR. Submitted on briefs June 13, 1995.—Decided July 20, 1995.*

(Also reported in 537 N.W.2d 62.)

†Petition to review denied.

1055

1058

1060

For the defendant-appellant the cause was submitted on the briefs of *Daniel P. Bestul* of *Duxstad, Vale, Bestul & Gartzke, S.C.* of Monroe.

1061

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Daniel J. O'Brien*, assistant attorney general.

Before Eich, C.J., Sundby and Vergeront, JJ.

VERGERONT, J. Marvin Hereford appeals from a judgment convicting him of first-degree intentional homicide while possessing a dangerous weapon contrary to §§ 940.01(1) and 939.63(1)(a)2, STATS., and from an order denying his motion for a new trial. Hereford was convicted after a retrial following a mistrial. He appeals on these grounds: (1) the trial court misused its discretion and erred as a matter of law in admitting the testimony of Ella Brown to prove identity under § 904.04, STATS.;[1] (2) § 906.13(1), STATS.,[2] does not permit or require the disclosure of a defense investigator's reports of witness interviews; and (3) disclosure of the reports violated his Sixth Amendment right to counsel.

We affirm the convictions. We conclude, on different grounds than did the trial court, that Ella Brown's testimony was properly admitted. We also conclude

---

[1] Section 904.04(2), STATS., provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[2] Section 906.13(1), STATS., provides:

> In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown or its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel upon the completion of that part of the examination.

that although certain reports of witness interviews were erroneously ordered disclosed under § 906.13, STATS., that error was not prejudicial and did not violate Hereford's right to counsel.

## OTHER ACTS EVIDENCE

*Background*

Hereford was charged with the first-degree intentional homicide of Frank Gurley, who was shot outside a Beloit tavern. Hereford's defense was that someone else, Darren Isabell, shot Gurley. The first trial ended in a mistrial when the jury informed the trial court that it could not reach a decision.

During the first trial, the State sought to introduce the testimony of Ella Brown, Hereford's grandmother. The trial court denied the State's request to introduce Brown's testimony, but permitted the State to make an offer of proof later in the trial. In that offer of proof, Brown testified that sometime before the shooting, she found a gun beneath a bed in the guest room of her home. She put the gun in a drawer. Sometime later, she noticed it was not in the drawer. Then, approximately three weeks before the shooting, when she was driving Hereford's car and came to an abrupt stop, the same gun she had found in her home slid out from under the front seat of the car. She confronted Hereford about the gun and he told her not to be concerned about it. Brown told Hereford she should throw the gun in the river, but she did not do that. Brown described the gun as small, silver, and missing a clip. The State argued that this testimony was admissible to show opportunity and to show that Hereford had a small caliber handgun fitting the description of the murder weapon a week or weeks before the murder.

At the close of testimony in the first trial, following the State's rebuttal witnesses, the court concluded that the offered testimony of Ella Brown was relevant, but that its probative value was substantially outweighed by the danger of unfair prejudice to the defense.

Before the second trial, the court heard Hereford's motion in limine regarding the State's desire to reintroduce Brown's testimony. At this hearing, the trial court inaccurately recalled that the State had offered the evidence only in its case-in-chief in the first trial and that, had the State done so in rebuttal, it would have allowed the testimony because it went to the identity of the assailant. The court did not rule on the motion at that time. But, when the State offered Brown's testimony in the rebuttal phase of the second trial, the court ruled it admissible. The State's argument was essentially the same as at the first trial. The State argued that Brown's testimony was relevant because it showed Hereford in possession of a gun similar to the murder weapon one to three weeks before the shooting. According to the State, Brown's testimony went to identity and opportunity.

Hereford's counsel pointed out to the court that the same testimony was offered by the State in rebuttal at the first trial and was excluded. Counsel argued that the court could not reverse its prior ruling, that it had prejudged the issue, and that the evidence was not admissible under § 904.04(2), STATS.

The trial court ruled that Brown's testimony was relevant because it went to the identity of the person who shot Gurley, which was the central issue in the trial. The court decided that the probative value of the evidence outweighed the prejudicial effect. In making this ruling, the court recognized that it came to a different conclusion at the first trial.

Brown testified in person at the second trial as part of the State's rebuttal. Her testimony was substantially the same as that offered, but not received, at the first trial. At the close of the trial, the court offered to give a limiting instruction to the jury regarding the proper use of Brown's testimony. Hereford opposed a limiting instruction and none was given.

■

The decision of whether to admit or exclude evidence is within the trial court's discretion. *Johnson v. Agoncillo*, 183 Wis. 2d 143, 154, 515 N.W.2d 508, 513 (Ct. App. 1994). We will not reverse such a discretionary determination where it has a reasonable basis and was made in accordance with accepted legal standards and the facts of record. *Id.*

■

Hereford argues that the trial court misused its discretion because it suggested a ground for admissibility of Brown's testimony based on an erroneous belief of the record. We find no merit to this claim.

As the State concedes, the trial court was mistaken in thinking that it had excluded the testimony because the State had offered it as part of its case-in-chief. While under that misimpression, the trial court asked the prosecutor: "The State chose not to use it, apparently by rebuttal? Doesn't it go to identity?" The prosecutor answered that it did. The trial court then went on to indicate why it felt the testimony went to identity and that it would have allowed the testimony for rebuttal at the first trial, still under the mistaken impression.

We do not read this interchange as indicating that the trial court advocated for the State, as Hereford contends. The court simply tried to recall what it did and why when this issue came up at the first trial. We

see no significance in the fact that the trial court was initially mistaken about the basis for its first ruling. The important point is that when the trial court later ruled that Brown's testimony was admissible, it had an accurate understanding of the basis for its first ruling. After discussing in detail the testimony of other witnesses that made Brown's testimony relevant, it concluded, "Apparently, I didn't feel it was at the time of the first trial, but upon reflection and upon the entire record here, I think its probative value exists and that the prejudicial effect is not outweighed by its probative value [sic]."

■

Hereford concedes that a trial court has the discretion to change its rulings. But he argues that the trial court misused that discretion because, although it explained the reasons for its new ruling, it did not explain what was wrong with the first ruling. We do not agree. If the new ruling on the admissibility of Brown's testimony has a reasonable basis and is supported by the facts of record and the proper legal analysis, we will sustain the new ruling. We conclude the trial court's decision to admit Brown's testimony meets this standard.

*Permissible Purpose*

■

All testimony must be relevant to be admissible and, generally, relevant testimony is admissible. Section 904.02, STATS. Relevant evidence is evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. Section 904.01, STATS. However, even if relevant, testimony of a person's other acts is not

admissible to prove the character of a person in order to show the person acted in conformity therewith. Section 904.04(2), STATS. But such testimony is admissible for other purposes. Section 904.04(2) lists these other purposes: "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This list is not exclusive, but rather illustrative. *State v. Shillcutt*, 116 Wis. 2d 227, 236, 341 N.W.2d 716, 720 (Ct. App. 1983), *aff'd*, 119 Wis. 2d 788, 350 N.W.2d 686 (1984). If a trial court determines that testimony of other acts is relevant for a purpose not prohibited by § 904.04(2), then it must determine whether the probative value of the testimony is substantially outweighed by the danger of unfair prejudice. *State v. Bedker*, 149 Wis. 2d 257, 266, 440 N.W.2d 802, 805 (Ct. App. 1989); § 904.03, STATS.

Hereford concedes for purposes of argument that Brown's testimony was relevant. But he argues that the trial court erred in deciding the testimony was evidence of Hereford's identity. We agree with Hereford that Brown's testimony is not evidence of his identity in that it does not relate the type of unique actions by Hereford that would carry his imprint and therefore serve to identify him as the person who killed Gurley. *Cf. Whitty v. State*, 34 Wis. 2d 278, 295, 149 N.W.2d 557, 564 (1967), *cert. denied*, 390 U.S. 959 (1968) (testimony that defendant had enticed another child into a basement to look for a lost rabbit admissible for the purpose of identifying the defendant as the assailant of the child victim in present case). However, we conclude Brown's testimony is nevertheless admissible because it was relevant for purposes other than to prove Hereford's character.

The State's case included testimony that Hereford said, "I am going to get my shit" as he headed for the car moments before the shooting, and testimony that Hereford was seen leaning into his car before the shooting and then walking away from his car with what appeared to be a gun. Two witnesses for the State, relatives of Gurley, testified that they saw Hereford walking toward the spot where the shooting took place carrying a gun and saw Hereford fire the gun. Another witness testified that she was in a car parked behind Hereford's car, and just before the shooting she saw Hereford lean into his car. The passenger in the car parked behind Hereford's car testified that Hereford returned, threw a gun into their car, entered their car and told them to take him to the lagoon. The passenger handed the gun back to Hereford and that was the last either the driver or the passenger saw of it. Their testimony was that Hereford got out of the car at the lagoon and then got back in.

Testimony that Hereford had a gun in his car three weeks before the shooting that was similar to the gun that killed Gurley is probative for a number of purposes. A jury could reasonably conclude from that evidence that Hereford had a gun in his car on the night of the shooting. That, together with the testimony that Hereford went to his car before the shooting, is evidence that Hereford had the means to commit the crime.

The reasonable inferences a jury could draw from Brown's testimony, in conjunction with the testimony that Hereford went to his car announcing, "I am going to get my shit" and returned to the scene, is also probative of Hereford's intent. This is evidence that Hereford made a deliberate decision to go to his car to get his

gun, which tends to make it more probable that Hereford intended to shoot someone and less probable that the shooting was spontaneous. The State is not precluded from submitting evidence on intent even though the defense theory was that Hereford did not shoot Gurley. *See State v. Clark*, 179 Wis. 2d 484, 494, 507 N.W.2d 172, 175 (Ct. App. 1993) (intent is an issue and other acts evidence is admissible on intent even though the defense theory is that injuries were not caused by the defendant).[3]

Brown's testimony also provides an explanation for the otherwise ambiguous comment, "I'm going to get my shit," and the otherwise ambiguous movement of Hereford leaning into his car. Testimony of other acts for the purpose of providing the background or context of a case is not prohibited by § 904.04(2), STATS. *Shillcutt*, 116 Wis. 2d at 236, 341 N.W.2d at 720.

Hereford suggests that because the trial court found that Brown's testimony went to the identity of Hereford, we may not find it admissible for other purposes. That is incorrect. Where the trial court has applied a mistaken view of the law, we will not reverse if the facts and their application to the proper legal analysis support the trial court's conclusion. *State v. Sorenson*, 143 Wis. 2d 226, 250, 421 N.W.2d 77, 87 (1988). Here, the trial court reviewed the testimony of

---

[3] We reject the State's argument that Brown's testimony goes to intent because a jury could reasonably conclude that Hereford kept the gun in the car "precisely for situations like this when he felt the need to use it." We agree with Hereford that it is an impermissible use of other acts testimony to infer from the fact of having a gun in his car that he intended to shoot or kill Gurley.

other witnesses that, in the trial court's view, made Brown's testimony relevant. The trial court was correct in concluding that Brown's testimony was relevant for a purpose other than the impermissible purpose of character. It was incorrect to call this other purpose "identity." However, because its conclusion was based on facts of record and is supported by a legal analysis that correctly identifies other permissible purposes for the testimony, we sustain the trial court's discretionary determination that Brown's testimony is not inadmissible under § 904.04(2), STATS.

*Prejudice*

We now consider whether the trial court misused its discretion in deciding that the probative value of Brown's testimony was not substantially outweighed by the danger of unfair prejudice. Hereford's argument here is that the hung jury in the first case and the conviction in the second case demonstrate that Hereford was greatly prejudiced by Brown's testimony because that was the only significant difference in the testimony at the two trials. We reject Hereford's claim that this demonstrates unfair prejudice and the trial court's misuse of its discretion.

In the context of other acts evidence, prejudice refers to the potential harm in a jury concluding that because an actor committed one bad act, he or she necessarily committed the crime charged. *Clark*, 179 Wis. 2d at 496, 507 N.W.2d at 177. The fact that other acts testimony weakens the defense's theory of the case does not make it unfairly prejudicial.[4] *Id.* at 496, 507

---

[4] The trial court properly recognized this when it stated that anything that would go to prove the possible guilt of the

N.W.2d at 176-77. The critical inquiry here is to what degree did Brown's testimony have the potential to influence the jury by an improper means—the suggestion that because there was a gun under the seat of Hereford's car within three weeks of the shooting, Hereford must have shot Gurley. We think the trial court could reasonably conclude that the potential for a jury to make this assumption is not so great as to outweigh the probative value of Brown's testimony.[5]

## DEFENSE INVESTIGATOR'S INTERVIEW SUMMARIES

### *Background*

defendant, of course, is prejudicial in the broad sense. The court then correctly stated the test as whether the admission of the testimony is so unduly prejudicial as to outweigh its probative value.

[5] The trial court offered to give a limiting instruction that testimony concerning the gun in Hereford's car before the date of the shooting could not be considered as evidence that Hereford had a certain character or was a bad person and therefore is guilty of the charged offense. The proposed instruction stated that the evidence could only be considered on the issue of identity, that is "whether the prior conduct of the defendant tends to identify the defendant as to whether or not he committed the offense." Defense counsel, without explanation, stated, in response to the court's question, that she did not want the proposed instruction or any other limiting instruction given. Generally such an instruction is considered to cure unfair prejudice. *State v. Clark*, 179 Wis. 2d 484, 497, 507 N.W.2d 172, 177 (Ct. App. 1993). On appeal, Hereford argues that because Brown's testimony did not go to identity, his objection to the proposed instruction does not prevent him from challenging the court's evidentiary ruling. We agree. Hereford is not arguing on appeal that the trial court erred in not giving any limiting instruction or in not giving an alternative one requested by him.

Steven Thurner is an investigator employed by the state public defender's office. At the request of Hereford's trial counsel, he interviewed potential witnesses. Thurner took notes during the interviews and then dictated a report, titled an "Investigation Report," on each interview from his notes. He prepared over seventy investigation reports for Hereford's two trials.

Before the first trial, the prosecution requested production of those investigation reports for all witnesses who were going to testify. Hereford's counsel objected, claiming they were work product. The court denied the request for pretrial disclosure, stating that it would rule on disclosure on a witness-by-witness basis at trial. During the first trial, the court ordered defense counsel to provide the State with reports concerning approximately fourteen witnesses. Defense counsel complied while continuing to object and moving for a mistrial. These witnesses fall into these categories: (1) witnesses where defense counsel asked about interviews with Thurner either on direct or cross-examination, (2) defense witnesses where defense counsel did not ask questions about interviews with Thurner, but was ordered to turn over Thurner's reports after direct examination, (3) defense witnesses where defense counsel was ordered to turn over reports before the witness testified, and (4) state witnesses where defense counsel asked the state witness on cross-examination if the witness had a conversation with another witness.

Hereford filed a motion in limine in the second trial which, the State appears to concede, preserved a continuing objection to disclosure of Thurner's reports. At the second trial, the court ordered Hereford's counsel to provide the prosecution with Thurner's interview report on Sharri Bradley after the defense had

examined her on direct without asking about the interview.[6] Defense counsel objected but the court reaffirmed its ruling that Thurner's interviews of all persons who were to be witnesses were to be provided to the State. The prosecution used Thurner's interview of Bradley to cross-examine her.

During the second trial, the prosecution used Thurner's reports provided in the first trial to cross-examine a number of defense witnesses where defense counsel did not refer to the interview on direct examination in the second trial. The prosecution also used Thurner's interview of Ella Brown in direct examination.[7] Defense counsel questioned some defense witnesses on direct examination about Thurner's interviews with them and at least one of the State's witnesses on cross-examination.

At the close of testimony, Hereford moved for a mistrial on the ground that the prosecution had improperly been given access to Thurner's reports in the first trial, thereby allowing the prosecution to use these to prepare for and use in the examination of witnesses in the second trial. The court denied the motion, concluding that the reports were statements made by witnesses and therefore were relevant.

Hereford's motion for a new trial on this ground was also denied. The trial court ruled that disclosure of the statements of witnesses who were going to testify was proper under § 906.13, STATS., but that even if this were error, it did not result in prejudice to Hereford.

*Application of § 906.13(1),* STATS.

---

[6] Bradley testified at the first trial but apparently the State forgot to ask for her statement.

[7] Apparently defense counsel provided this report pursuant to the court's ruling at the beginning of the second trial.

Hereford argues that § 906.13, STATS., does not apply in criminal trials and that Thurner's interviews are not statements under § 906.13(1). He also contends that even if § 906.13(1) applies, the court's orders went beyond what is permitted by that statute.

■■■

The interpretation of § 906.13, STATS., presents a question of law, which we decide *de novo* without deference to the trial court's determination. *See Tahtinen v. MSI Ins. Co.*, 122 Wis. 2d 158, 166, 361 N.W.2d 673, 677 (1985). We conclude that § 906.13 does apply in criminal proceedings and that Thurner's reports of interviews are statements within the meaning of § 906.13(1). However, we also conclude that the trial court erred in ordering that Hereford's counsel provide the prosecution with reports of witness interviews as to all witnesses who had not yet been examined by the defense concerning the interview.

Section 911.01(2), STATS., provides that chs. 901 to 911, STATS., apply generally to civil and criminal proceedings. The listed exceptions are not applicable here. *See* § 911.01(4). Our supreme court and this court have applied § 906.13(1), STATS., in criminal cases. *See, e.g., State v. Echols*, 175 Wis. 2d 653, 674-77, 499 N.W.2d 631, 637-38, *cert. denied*, 114 S. Ct. 246 (1993); *State v. Pulizzano*, 148 Wis. 2d 190, 195, 434 N.W.2d 807, 809-10 (Ct. App. 1988), *aff'd*, 155 Wis. 2d 633, 456 N.W.2d 325 (1990). Hereford nonetheless argues that § 906.13(1) does not apply in criminal cases because § 971.24(1), STATS., "supersedes" § 906.13(1). This argument is premised in part on his contention that the definition of "statement" is the same in both statutes, making § 906.13(1) superfluous in criminal proceedings.

Section 971.24, STATS., is part of ch. 971, STATS., entitled "Criminal Procedure." Section 971.24(1) requires that at trial, before a witness other than the defendant testifies, "written or phonographically recorded statements of the witness, if any, shall be given to the other party in the absence of the jury." Section 906.13(1), STATS., requires that a prior statement made by a witness, "whether written or not," must be disclosed to opposing counsel only upon opposing counsel's request and only after the witness has been examined concerning the statement.

Section 971.24, STATS., is a discovery statute and § 906.13, STATS., is an evidentiary statute. They each serve a different purpose. The purpose of disclosure under § 906.13(1) is to make sure the statement on which the witness is examined was in fact made and is not misrepresented by counsel in the examination of the witness. Judicial Council Committee's Note, 1974, § 906.13, STATS. Section 971.24, on the other hand, serves the purpose of providing opposing counsel with prior statements of a witness in order to test whether the witness's testimony is consistent and accurate. *Pohl v. State*, 96 Wis. 2d 290, 310, 291 N.W.2d 554, 563 (1980).

In addition to serving different purposes, the language relating to "statement" in each statute is different. Statements of the witness under § 971.24, STATS., must be "written or phonographically recorded." This requirement has been interpreted strictly. It does not apply to notes of defense counsel of interviews with witnesses. *Pohl*, 96 Wis. 2d at 311, 291 N.W.2d at 564. The State agrees with Hereford that Thurner's reports

of witness interviews are not statements of witnesses under § 971.24.

Section 906.13(1), STATS., on the other hand, applies to the prior statement of the witness "whether written or not." There is no limiting language describing the nonwritten statement in § 906.13(1), as there is in § 971.24, STATS. "Statement" is defined in § 908.01(1), STATS., as "an oral or written assertion or . . . nonverbal conduct of a person, if it is intended by the person as an assertion." This same definition in the federal rules of evidence has been used to define "statement" in the federal counterpart to § 906.13, FED. R. EVID. 613. *United States v. Praetorius*, 622 F.2d 1054, 1065 (2d Cir. 1979), *cert. denied sub nom. Lebel v. United States*, 449 U.S. 860 (1980). Federal cases may provide persuasive guidance to the proper application of a state statute copied from federal law. *State v. Gudenschwager*, 191 Wis. 2d 432, 440, 529 N.W.2d 225, 228 (1995). We conclude that the definition of "statement" in § 908.01(1) applies to § 906.13(1).

This broader definition of statement in § 906.13, STATS., is consistent with the differing purposes of each statute. The narrower definition under § 971.24, STATS., ensures that before disclosure the statement has the necessary indicia of reliability in the form of "accuracy, completeness and authenticity." *Pohl*, 96 Wis. 2d at 311, 291 N.W.2d at 564. The broader definition under § 906.13(1) ensures that any time a witness is examined about a statement attributed to him or her, opposing counsel has the opportunity to see the statement to make sure examining counsel is not making misleading insinuations about the existence or contents of the statement. Since §§ 971.24 and 906.13(1) serve different purposes and contain differ-

ent definitions of "statement," § 971.24 does not "supersede" § 906.13(1) in criminal cases. Both apply.

We have examined Thurner's reports of witness interviews and conclude they meet the definition of prior statements of witnesses under § 906.13(1), STATS. They are lengthy and detailed accounts of what the witnesses told Thurner. Neither party called Thurner to testify at the second trial. Instead, they stipulated that:

> [I]f called to testify [Thurner] would testify at the request of the defense he prepared investigative reports from notes made contemporaneously with his interviews of witnesses and his investigative reports are accurate summaries, paraphrasings of the entire witness interview. His notes are reduced to a written report, usually within an hour of the interview or as soon as thereafter as possible.

Hereford appears to argue that Thurner's reports cannot be statements under § 906.13(1), STATS., because they may mistakenly report what a witness said, unlike a transcript of a recording. However, as we explain in more detail below, § 906.13(1) requires disclosure of Thurner's report of a witness interview only if Hereford's counsel has first examined a witness about a statement made to Thurner. When Hereford's counsel relies on the accuracy of Thurner's report to examine a witness about a statement made to Thurner, there is no basis for Hereford to claim that he should not have to disclose the report after the examination because it does not accurately report what the witness said.

Although Thurner's report of a witness interview is a statement under § 906.13(1), STATS., Hereford is not required to disclose it unless and until his counsel has examined the witness concerning statements made to Thurner (and the prosecution requests disclosure). At the first trial, the court ordered at least eleven of Thurner's reports turned over to the prosecution when the witnesses had not been examined by defense counsel about their statements to Thurner. The court based these rulings, variously, on the fact that the witness had testified, the fact that the witness was going to testify, the fact that someone else had testified he knew or had conversations with the witness, and the fact that defense counsel had the reports. None of these are grounds for requiring disclosure under § 906.13(1) when the witness has not been examined about his or her prior statement.

At the second trial, apparently the only two reports ordered disclosed that had not been made available in the first trial were those concerning Brown and Crystal Bradley. This also was error. The defense had not questioned either about their statements to Thurner on its direct examination. The prosecution was therefore not entitled to disclosure of Thurner's reports of his interviews with these two witnesses.

The State cites two cases, *United States v. Marks*, 816 F.2d 1207 (7th Cir. 1987), and *United States v. Nobles*, 422 U.S. 225 (1975), in support of its position that it was entitled to the reports before the witness was examined by the defense about a prior statement made to Thurner and even if the witness was never examined by the defense about a prior statement made to Thurner. In *Marks*, defense counsel examined a witness about prior statements made in a written report of

an FBI investigator. The United States Court of Appeals for the Seventh Circuit held that it was within the trial court's discretion to order that the report be shown to the witness in spite of the language in FED. R. EVID. 613(a) (also in § 906.13(1), STATS.) that the statement need not be shown to the witness. The critical point in *Marks*, ignored by the State, is that the witness was being examined about a prior statement.

In *Nobles*, the trial court did not order defense counsel to disclose the defense investigator's report at the time defense counsel cross-examined a witness about statements made to the investigator. The court did, however, rule that the defense investigator could not testify about his interviews of witnesses for the purpose of impeaching those witnesses unless the reports of those interviews were produced. The United States Supreme Court held that this ruling did not violate the defendant's Fifth Amendment right against compulsory self-incrimination, federal discovery rules, or the work product doctrine. *Nobles*, 422 U.S. at 234-40. In *Nobles*, as in *Marks*, the witness had been examined about his prior statement.

*Harmless Error Analysis*

Having determined that the trial court erred in ordering disclosure of a number of Thurner's reports, we must determine whether the error affected a substantial right of Hereford. Section 805.18(2), STATS. If there is no reasonable possibility that a different result would have been reached had the prosecutor in the second trial not had the reports that were erroneously ordered produced, the error is harmless and Hereford is not entitled to reversal of his convictions. *See State v.*

*Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231-32 (1985).

Hereford makes a general argument that because the State had the reports as a result of erroneous rulings at the first trial, it had the opportunity to study them and incorporate them into its presentation at the second trial. This was obviously prejudicial, Hereford claims, because there were convictions at the second trial but not the first.

All of the reports that were erroneously ordered produced were produced during the first trial, with the exception of the report on Brown, who did not testify at the first trial, and Bradley. The prosecution had the use of the reports to cross-examine witnesses during the first trial and, in some cases, obtained the reports well in advance of the witnesses' testimony. Nevertheless, there was a hung jury at the first trial. We will therefore not presume that access to the reports that were erroneously ordered disclosed in the first trial was the cause of the convictions in the second trial. Instead, we examine the use of the reports at the second trial to determine whether there is a reasonable possibility the results at the second trial would have been different had the State not used the reports.

We begin by noting that no defense investigative reports were disclosed concerning the two witnesses, Annie Williams and Nathaniel Perry, who testified they saw Hereford shoot Gurley, or the two witnesses, Jennifer Cooper and Cory Davidson, who testified Hereford came to their car seconds after the shooting, dropped a gun in the car, and told them to drive to the lagoon, where he left the car for a few minutes. Also, no report was disclosed concerning the officer who apprehended Hereford the day after the murder, who testified that Hereford said he had been "expecting it."

Only two of the reports disclosed to the prosecution involved prosecution witnesses—Demetrius Curry and Brown. Curry was the witness who testified that he heard Hereford say, "I am going to get my shit" as he walked toward his car. Curry told this to the police officer who took his statement and to Thurner. Thurner's report on his interview with Curry was properly ordered disclosed at the first trial because defense counsel had cross-examined him about his statements to Thurner. Defense counsel did so again at the second trial.

At the second trial, Brown's testimony was the same as that provided in the offer of proof on the significant points—that she had found a gun similar to that used in the murder in a bedroom of her house and in Hereford's car some weeks before the murder. The prosecution used her prior testimony and her statement to a police officer to impeach her and to refresh her recollection. The prosecution used Thurner's report to ask her whether the gun struck her foot when it slid from under the car seat and to ask about her description of the gun. The questions based on Thurner's report did not make her testimony more damaging to the defense or more helpful to the prosecution in any significant manner.

Hereford points to the testimony of the defense witness, Cecilia Lomax-Flannigan, as an example of how access to the reports before the second trial prejudiced the defense at the second trial. Lomax-Flannigan testified at the second trial that she saw Darren Isabell with a gun in his hand about the time Gurley was shot and near the location at which Gurley was shot. This information was also contained in a statement she gave to a police officer and in Thurner's report on his interview with her. The most persuasive

attack on her credibility was the prosecution's use of her statement to the police officer indicating that the gun in Isabell's hand was larger than the gun that shot Gurley. The prosecution used Thurner's report to impeach her testimony on more minor points. The defense used Thurner's report to rehabilitate Lomax-Flannigan, particularly on the issue of the size of the gun Isabell had. Of course, in any event, defense counsel would have had to produce Thurner's report after questioning Lomax-Flannigan about it on redirect. Giving Hereford the benefit of the assumption that defense counsel would not have used Thurner's report in its redirect examination had the prosecution not already used it on cross-examination, we conclude that the prosecution's use of the report did not significantly affect the value of Lomax-Flannigan's testimony for the defense.

We have examined the testimony of the other witnesses with whom the prosecution used reports that should not have been disclosed because Hereford's counsel had not first questioned the witnesses on statements made to Thurner. In many cases the reports corroborated information already elicited by the prosecution. The impeachment use of the reports was on points that did not have a significant impact on the central issue: did Hereford or someone else shoot Gurley? We conclude there is no reasonable possibility that the outcome of the second trial would have been different had the State not had access to the reports that were erroneously ordered disclosed.[8]

---

[8] Hereford did not identify any witness besides Lomax-Flannigan. The State identified seven other defense witnesses with whom it used Thurner's reports in its examination when the defense had not first examined the witness on statements to

*Right to Counsel*

Hereford contends that Thurner's reports were his attorney's work product[9] and their compulsory disclosure interfered with the ability of his counsel to present a defense, thereby violating his Sixth Amendment right to counsel.

The work product doctrine does not protect against disclosure at trial when the attorney makes testimonial use of the work product. *Nobles*, 422 U.S. at 239 n.14. Assuming for purposes of argument that the reports that were erroneously ordered disclosed under § 906.13(1), STATS., did not lose work product protection,[10] we conclude that the compelled disclosure did not violate Hereford's right to counsel.

Thurner: Sharri Bradley, Darren Isabell, Tracey Vance, Charles Herd, James Jones, Terry Hatchett, and Leon Davidson. Hereford did not add any names to this list in his reply brief.

[9] The State does not dispute that Thurner's reports are attorney work product.

[10] The State cites *Shaw v. Wuttke*, 28 Wis. 2d 448, 456, 137 N.W.2d 649, 653 (1965), for the proposition that all work product protection is lost at trial. However, the precise holding in *Shaw* was that the immunity accorded an attorney's work product with respect to a written statement ceases to exist when the person making the statement is placed on the stand as a witness at trial. The reasoning of the *Shaw* court is that by becoming a witness, the person subjects himself or herself to the risks of impeachment and the attorney has had the benefit of the work product. *Shaw*, 28 Wis. 2d at 456, 137 N.W.2d at 653. The later case of *Long v. Milwaukee & Suburban Transp. Corp.*, 67 Wis. 2d 384, 392, 227 N.W.2d 67, 71 (1975), held that *Shaw* did not apply because the work product involved was an attorney's notes on a witness interview, not a written statement signed by

Hereford relies on *Maine v. Moulton*, 474 U.S. 159 (1985), in arguing that his Sixth Amendment right to counsel was violated. In *Moulton*, the Court held that the defendant's Sixth Amendment right to counsel was violated by the admission of defendant's incriminating statements, which the prosecution obtained by knowingly circumventing the defendant's right to have counsel present. There is no similarity between the conduct of the prosecution in *Moulton* and the prosecution in this case. The prosecution here obtained the reports pursuant to court order, not by improperly communicating with Hereford. No reports concerning Hereford were involved. *Kastigar v. United States*, 406 U.S. 441 (1972), and *United States v. North*, 910 F.2d 843 (D.C. Cir. 1990), *cert. denied*, 500 U.S. 941 (1991), on which Hereford also relies, are inapposite as well. These cases concern the prohibition against the use of immunized testimony and have no application here.

*By the Court.*—Judgment and order affirmed.

the witness. Also, the court held, the attorney had not yet had the benefit of the work product because the trial had not yet started. According to the court, the attorney might yet choose to settle the case or not to call the person interviewed as a witness. *Id.*