STATE of Wisconsin, Plaintiff-Respondent,

v.

Murle E. PERKINS, III, Defendant-Appellant.†

Court of Appeals

*No. 99–1924–CR. Submitted on briefs January 11, 2000.—Decided May 4, 2000.*

· 2000 WI App 137

(Also reported in 614 N.W.2d 25.)

†Petition to review granted.

313

On behalf of the defendant-appellant, the cause was submitted on the brief of *William E. Schmaal*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas J. Balistreri*, assistant attorney general, and *James E. Doyle,* attorney general.

Before Vergeront, Roggensack and Deininger, JJ.

¶ 1. DEININGER, J.  Murle Perkins appeals a judgment which convicted him of threatening a judge, and an order which denied him postconviction relief from that judgment. He claims the State presented insufficient evidence at trial to support the jury's guilty verdict. Perkins also asks us to grant him a new trial because of the alleged inadequacy of the current pattern jury instruction regarding the crime of threatening a judge. Finally, Perkins argues that his trial counsel was ineffective for not stipulating to his prior felony convictions for purposes of a companion charge of being a felon in possession of a firearm.

¶ 2.  We conclude that the evidence at trial was sufficient to support the jury's verdict that Perkins was guilty of threatening a judge, and further, that Perkins suffered no prejudice from his counsel's failure to stipulate to an element of the companion firearm charge. We also decline to exercise our discretionary authority to reverse and order a new trial because we are not convinced that the real controversy was not fully tried. Accordingly, we affirm the appealed judgment and the order denying postconviction relief.

## BACKGROUND

¶ 3.  Three weeks after Judge Robert Radcliffe found Perkins in contempt of court for failing to pay nearly $50,000 in child support and interest, Perkins spent the day at a bar and became intoxicated. Around 5:30 p.m., Perkins telephoned his sister-in-law from the bar and asked her to drive him to his home. She testified that he appeared to be "drunk" and seemed very "depressed." Later that evening, two of Perkins's friends contacted the Black River Falls police to report that an "exceptionally depressed" Perkins had telephoned them to say "goodbye" and that he was "tired of it, it's—it's finished."

¶ 4.  A police officer dispatched to the residence observed that Perkins was intoxicated. During the course of a thirty-minute conversation, Perkins admitted to the officer that he was depressed, that he had contemplated suicide, and that he had fired a gunshot. At one point, Perkins grinned and told the officer that he would take his own life with "a shoestring," but went on to say "it would be very easy" as he glanced at a nearby gun cabinet containing several "long guns." Later in the conversation, Perkins said, "if I were gonna do—do myself, I'd—I'd shoot Judge Radcliffe first because he's a brain dead son of a bitch." The officer took Perkins into custody under a Chapter 51 emergency detention because the officer believed "that he was possibly a danger to himself and possibly to others."

¶ 5.  The State subsequently charged Perkins with threatening a judge, intoxicated use of a firearm, and possessing a firearm as a convicted felon. A jury found Perkins guilty of making a threat to a judge but acquitted him on the two firearms charges. Perkins moved for postconviction relief, citing insufficient evi-

dence and ineffective assistance of counsel. Following a hearing, the trial court denied relief, and Perkins appeals the judgment of conviction and the order denying postconviction relief.

## ANALYSIS

¶ 6.  The supreme court in *State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990), discussed the difference between a jury's obligation to acquit unless the State has proven a defendant guilty beyond a reasonable doubt, and our standard for reviewing the sufficiency of the evidence to support a jury's verdict of guilty. The court noted that when reviewing the sufficiency of the evidence, " '[t]he test is not whether this court or any of the members thereof are convinced [of the defendant's guilt] beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true. . . .' " *Id.* at 503–04 (citation omitted). The court explained the standard of review as follows:

> [I]n reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*Id.* at 507 (citation omitted).

¶ 7. In order to determine whether the State adduced sufficient evidence at trial to permit a jury to find Perkins guilty of threatening a judge, we must first determine what the State had to prove in order to gain a conviction. WISCONSIN STAT. § 940.203(2) (1997–98)[1] provides as follows:

> Whoever intentionally causes bodily harm or threatens to cause bodily harm to the person or family member of any judge under all of the following circumstances is guilty of a Class D felony:
>
> (a) At the time of the act or threat, the actor knows or should have known that the victim is a judge or a member of his or her family.
>
> (b) The judge is acting in an official capacity at the time of the act or threat or the act or threat is in response to any action taken in an official capacity.
>
> (c) There is no consent by the person harmed or threatened.

The Criminal Jury Instruction Committee has concluded that the statute requires proof of six elements: (1) that the defendant "threatened to cause bodily harm to" a person; (2) that the person "was a judge"; (3) that "the defendant knew that [the person] was a judge"; (4) that the judge "was acting in an official capacity," or that the threat "was in response to an action taken in the judge's official capacity"; (5) that "the defendant threatened bodily harm without the consent of" the person; and (6) that "the defendant acted intentionally." WIS JI—CRIMINAL 1240 (footnotes omitted).

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

¶ 8. The principal issue in this appeal, central not only to Perkins's sufficiency of the evidence challenge but also to his request for discretionary relief, relates to the first and sixth elements. What does it mean to "threaten to cause bodily harm" to a judge, and is the requirement that a defendant do so "intentionally" sufficient to avoid conflicts with the First Amendment? Perkins claims that the term "threaten" in the statute is ambiguous, and it "must be construed such that it refers to speech or conduct which objectively causes reasonable fear that the threatened purpose will be carried out, but does not include idle or careless talk, jest or exaggerated political comment." And, according to Perkins, under this definition, the evidence at trial was insufficient to prove that he made a "true threat" against Judge Radcliffe on the evening in question.

¶ 9. Perkins asserts that nothing in the legislative history or statutory context of WIS. STAT. § 940.203 provides much guidance on the question, and he notes that there are no Wisconsin appellate opinions construing the term "threaten" as used in the statute. Perkins urges us, therefore, to construe the Wisconsin statute in the same manner in which the Supreme Court has interpreted a federal statute prohibiting the making of threats against the President of the United States. *See Watts v. United States*, 394 U.S. 705 (1969). The federal statute makes it a crime to "knowingly and willfully" make "any threat to take the life of or to inflict bodily harm upon the President. . . ." *Id.* at 705. A jury found the defendant in *Watts* guilty under the statute for saying, during a public rally at the Washington Monument, "I have already received my draft classification as 1—A and I have got to report for my physical this Monday coming. I am not going. If they ever make me

carry a rifle the first man I want to get in my sights is L.B.J." *Id.* at 706.

¶ 10.   The Supreme Court reversed the conviction, concluding that while the statute in question was "constitutional on its face," it needed to be "interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech." *Id.* at 707. The Court then explained why a "true threat" had not been proven on the record before it:

> [T]he statute initially requires the Government to prove a true "threat." We do not believe that the kind of political hyperbole indulged in by petitioner fits within that statutory term. . . . We agree with petitioner that his only offense here was "a kind of very crude offensive method of stating a political opposition to the President." Taken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners, we do not see how it could be interpreted otherwise.

*Id.* at 708.

¶ 11.   Perkins maintains that if we apply the Supreme Court's rationale in *Watts* to the present facts, we must reverse his conviction because the State did not establish that he made a "true threat" against Judge Radcliffe. Perkins claims the content and context of his remark shows that it did not constitute a "genuine, serious threat to cause bodily harm to Judge Radcliffe" because he was intoxicated when he uttered the statement; he "laughed and grinned" about the subject of killing himself; his comment was conditional and actually an assertion that he did *not* intend to kill himself (or Judge Radcliffe); and the reaction of his listener (the police officer) was to transport him to a mental

health facility, not to arrest him for making a threat. Although we agree with Perkins that the Supreme Court's discussion in *Watts* provides useful guidance on how WIS. STAT. § 940.203 should be interpreted in order to avoid conflict with the First Amendment, we conclude that the evidence at trial, "viewed most favorably to the state and the conviction," was of sufficient "probative value and force" that the jury could reasonably find, beyond a reasonable doubt, that Perkins made a "true threat" against Judge Radcliffe. *See Poellinger*, 153 Wis. 2d at 507.

■

¶ 12.   The State agrees with Perkins that it must prove a "real" or "true" threat in order to convict someone under WIS. STAT. § 904.203. The State maintains that this construction is mandated by the legislature's use of the term "intentionally," which requires that a defendant "have the mental purpose to threaten bodily harm," that is, the "expression of an intent to inflict injury . . . must be real, and not merely a joke or hyperbole. . . ." The State goes on to derive from federal case law the following objective test: whether the communication would be interpreted by a reasonable person as a serious expression of intent to inflict bodily harm.[2] And, in determining whether an alleged threat meets the test, the State acknowledges that all relevant contextual circumstances must be considered, including the nature of the threat, the events surrounding the making of the threat, and the reaction of those to whom the threat is communicated.[3]

---

[2] *See United States v. Hoffman*, 806 F.2d 703, 707 (7th Cir. 1986) (citing *Roy v. United States*, 416 F.2d 874, 877 (9th Cir. 1969)).

[3] *See United States v. Gordon*, 974 F.2d 1110, 1117 (9th Cir. 1992).

¶ 13.   Although Perkins claims in his reply brief that the State's analysis is flawed and that it "fails to account for the outcome in *Watts*," we disagree. We conclude that the objective test the State proffers, together with the requirement that a fact finder consider all of the circumstances surrounding an alleged threat in applying the test, provides a workable and reasonable guide for applying WIS. STAT. § 940.203. We find the State's interpretation to be in harmony with the Supreme Court's direction that indulgence in "political hyperbole" must be excluded from criminal conduct, and that a statement's context, its conditional nature, and the reaction of listeners are all proper considerations in determining whether a "true threat" has been uttered. *See Watts*, 394 U.S. at 708. Finally, we conclude that the test set forth in the preceding paragraph meets Perkins's demand that the statute "must be judicially construed in such a way as to necessitate unity between the comment and its contextual circumstances, [and] to specifically exclude idle talk or exaggerated political opinion."

■

¶ 14.   What remains is for us to determine whether, under all of the circumstances surrounding Perkins's statement regarding Judge Radcliffe, a jury could reasonably conclude beyond a reasonable doubt that a reasonable person would interpret the statement as a serious expression of intent to harm Judge Radcliffe. Perkins argues that the jury should have concluded on the present record that his statement ("if I were gonna do—do myself, I'd—I'd shoot Judge Radcliffe first because he's a brain dead son of a bitch") was what Perkins characterized it to be—the denial of an intent to harm himself, a misguided attempt at humor, and perhaps even a plea for help from someone who

was very drunk and depressed. However, the opposite inference—that the statement was a serious expression of intent to harm Judge Radcliffe—is also reasonable from the facts before the jury. When "more than one reasonable inference can be drawn from the evidence," we must adopt the inference which supports the jury's finding. *See Poellinger*, 153 Wis. 2d at 504.

¶ 15. The following facts support the jury's conclusion that Perkins intentionally threatened to cause bodily harm to Judge Radcliffe. Perkins testified that he was unhappy about "the child support system" because "they enforce the monetary part and not anything else," specifically, his "joint custody and visitation rights." From this, jurors could well conclude that Perkins had reason to be upset with the official who had most recently enforced the "monetary part" against him in the form of a contempt order requiring him to pay his support arrearage or go to jail. From his mention of Judge Radcliffe by name, and his epithet that the judge was a "brain dead son of a bitch," jurors could infer that Perkins harbored actual animus against the judge, and that the nature of his threat to shoot the judge made it more than an idle comment or figurative expression. A jury could well conclude that a reasonable person would interpret Perkins's statement as a serious expression of his intent to harm Judge Radcliffe.

¶ 16. The context of Perkins's threat is far different than that of the threat prosecuted in *Watts*. It was not uttered at a public, politically-motivated rally, but in the privacy of a residence, to a police officer who was investigating reports that Perkins may have fired a gun and might be intent on harming himself. There were firearms nearby, and Perkins admitted to the officer that he had recently fired a gun. Similarly,

unlike the comment in *Watts* which brought laughter from those who heard it, the officer's reaction to Perkins's threat was to take Perkins into protective custody on the belief that he presented a possible danger to himself and others at the time in question.

¶ 17.    Although it is true, as Perkins argues, that his threat was "conditional" in the sense that he said that *if* he were going to "do myself, I'd . . . shoot Judge Radcliffe first," the context of the remark rendered the condition precedent far from hypothetical. Those who had been in contact with Perkins immediately prior to the threat believed him to be intent on killing himself, making it as reasonable that a listener would take his statement to be a plan of action as it would be to interpret the remark as disavowing an intent of self-harm. Moreover, as the State points out, many threats are phrased "conditionally," but they are nonetheless deemed to constitute "true threats," worthy of prosecution. *See United States v. Bellrichard*, 994 F.2d 1318, 1323 (8th Cir. 1993). Finally, to the extent that Perkins's threat to shoot Judge Radcliffe was conditional, the conditional nature of the threat was only one of the contextual factors for the jury to consider, not the exclusive one. *See People v. Gudger*, 34 Cal. Rptr. 2d 510, 516–17 (1994).

¶ 18.    In summary, we conclude that the jury could reasonably determine, beyond a reasonable doubt, that on the night in question, Perkins intentionally threatened to inflict bodily harm on Judge Radcliffe. The evidence adduced at trial is sufficient to allow the jury to conclude that, under all of the relevant contextual circumstances (including the nature of the threat, the events surrounding the making of the threat, and the reaction of those to whom the threat

was communicated), a reasonable person would interpret Perkins's statement as a serious expression of intent to harm the judge.

¶ 19. We consider next Perkins's request that we exercise our discretionary reversal authority under WIS. STAT. § 752.35, to grant him a new trial. The request is closely related to Perkins's first claim of error, in that he claims the real controversy was not fully tried because the trial court's employment of the pattern jury instruction insufficiently apprised the jury of its obligation to evaluate whether he had uttered a "true threat" against Judge Radcliffe.[4] Perkins suggests that a proper instruction to the jury regarding the elements of WIS. STAT. § 940.203 must include language similar to the following, taken from a pattern federal instruction on the crime of threats to the President:

> In order to find that the defendant threatened the President you must find that a reasonable person would have understood the defendant's statement as a serious expression of intent, determination, or purpose to harm the President. . . .
>
> To determine whether or not the defendant "threatened" the President[,] you should consider the circumstances under which the statement was made including its context . . . the language the

---

[4] Perkins seeks relief via WIS. STAT. § 752.35 because, not having objected to the instruction in the trial court, he is precluded from now claiming the trial court erred by giving the instruction it did. *See State v. Schumacher*, 144 Wis. 2d 388, 402–03, 424 N.W.2d 672 (1988). We may use our discretionary power of reversal under § 752.35 where an error in the jury instructions has been waived by failure to object. *See Vollmer v. Luety*, 156 Wis. 2d 1, 20, 456 N.W.2d 797 (1990).

defendant used, the reaction of the defendant's audience . . . .

2 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS ¶ 31.01, instr. 31–5 (1999).

¶ 20. It would not have been error for the trial court to include language such as Perkins now suggests when instructing the jury on the elements of the crime of threatening a judge. We also agree with Perkins that some additional explication of the "true threat" requirement might have assisted the jury during its deliberations. We disagree, however, that the trial court's use of WIS JI—CRIMINAL 1240 either constituted error or prevented the real controversy from being fully tried. The court instructed the jury as follows regarding the need for it to conclude that Perkins "intentionally threatened" Judge Radcliffe before finding him guilty:

> The sixth element requires that the defendant acted intentionally. This requires that the defendant acted with the mental purpose to threaten bodily harm to another human being. You cannot look into a person's mind to find out intent. You may determine such intent directly or indirectly from all of the facts [in] evidence concerning this offense.
>
> You may consider any statements or conduct of the defendant which indicate state of mind. You may find intent to threaten bodily harm from such statements or conduct, but you are not required to do so. You are the sole judges of the facts and you must not find the defendant guilty unless you are satisfied beyond a reasonable doubt that the defendant intended to threaten bodily harm.

WIS JI—CRIMINAL 1240.

¶ 21. The instruction to the jury that it must find Perkins "acted with the mental purpose to threaten

bodily harm" to Judge Radcliffe was sufficient to convey to the jury that it could not find Perkins guilty if jurors believed his statement was merely "idle or careless talk, jest or exaggerated political comment," as Perkins argues the jury should have been more explicitly told. Moreover, the direction to the jury that it should determine Perkins's intent "from all the facts [in] evidence concerning this offense," and that it should consider "any statements or conduct of the defendant which indicate state of mind," also served to focus the jury's attention on the context of Perkins's statement, just as Perkins argues the jury was required to do.

¶ 22.   If the instructions given adequately cover the law applied to the facts, we will not find error in not giving other instructions even though, if given, they, too, would not be erroneous. *See State v. Amos*, 153 Wis. 2d 257, 278, 450 N.W.2d 503 (Ct. App. 1989). And, we will reverse the trial court and order a new trial only if the jury instructions, taken as a whole, misled the jury or communicated an incorrect statement of the law. *See Miller v. Kim*, 191 Wis. 2d 187, 194, 528 N.W.2d 72 (Ct. App. 1995). In short, while the jury could have been given more information regarding the nature of an actionable threat under WIS. STAT. § 940.203, the instruction the trial court gave was neither erroneous nor misleading. Accordingly, we cannot conclude that the real controversy was not fully tried, and we decline to reverse under WIS. STAT. § 752.35.

¶ 23.   Finally, we address Perkins's claim that his trial counsel was ineffective in failing to stipulate that he had prior felony convictions for purposes of the felon

in possession of firearm charge, thereby permitting the State to introduce certified copies of judgments convicting him of armed robbery and attempted robbery. *See State v. McAllister*, 153 Wis. 2d 523, 525–29, 451 N.W.2d 764 (Ct. App. 1989) (holding that where defendant stipulates to prior felony conviction, evidence of the nature of the prior crime is irrelevant and should be excluded). To prevail on a claim of ineffective assistance of counsel, a defendant must establish that his trial counsel's performance was deficient and that this performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Whether trial counsel's actions constitute ineffective assistance presents a mixed question of law and fact. *See State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711 (1985). We will not reverse the trial court's factual findings regarding counsel's actions at trial unless those findings are clearly erroneous. *See id.* at 634. Whether trial counsel's performance was deficient and whether that behavior prejudiced the defense, however, are questions of law which we review de novo. *See id.*

¶ 24.  In analyzing an ineffective assistance claim, this court may choose to address either the "deficient performance" component or the "prejudice" component first. *See Strickland*, 466 U.S. at 697. If we determine that the defendant has made an inadequate showing on either component, we need not address the other. *See id.* We turn first to the issue of prejudice. To prove prejudice, Perkins must show that trial counsel's errors had an actual, adverse effect on the defense. *See id.* at 693. He must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Specifically, Perkins must prove that the admission of the two prior judgments of con-

viction deprived him of a "fair trial, a trial whose result is reliable." *Id.* at 687. We are not persuaded that there is a reasonable probability that the results of Perkins's trial would have been different if his counsel had successfully acted to preclude admission of the judgments.

¶ 25.   Perkins claims that it is "probable" that the jury "used the evidence of [his] prior armed robbery and attempted robbery convictions as improper proof of character." Specifically, he argues that the nature of the prior convictions "could have suggested to the jury that [Perkins] had the character to make serious threats and had acted in conformity on this occasion." We disagree. We conclude that if the jurors were inclined to draw improper inferences from the. two prior convictions, they would be at least as likely, if not more likely, to conclude that a former armed robber would commit the firearms offenses with which Perkins was charged. Like the trial court, we conclude that the acquittals on the two firearms offenses show that the jury was not improperly influenced by knowledge that Perkins had previously been convicted of an armed robbery and an attempted robbery.[5] Since Perkins suffered no prejudice from the admission of the

---

[5] As the State points out, given the fact that it charged Perkins with felon in possession of a firearm, the jury was destined to learn that he had a prior felony conviction. Moreover, Perkins chose to testify in his defense, and the jury thus learned that he had four "prior criminal convictions." The court instructed the jury that "a criminal conviction at some previous time is not proof of guilt of the offenses now charged." This court has recognized that a limiting instruction greatly reduces the potential for prejudice stemming from the admission of evidence of other acts or wrongdoing. *See State v. Clark*, 179 Wis. 2d 484, 497, 507 N.W.2d 172 (Ct. App. 1993).

two judgments of conviction, it is not necessary for us to determine whether his counsel was deficient for not seeking their exclusion by way of a stipulation with the State.

## CONCLUSION

¶ 26.   For the reasons discussed above, we affirm the appealed judgment and order.

*By the Court.*—Judgment and order affirmed.